UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

MICHAEL HUFFINGTON,

    Plaintiff,

      v.                                    C. A. No. 09-CV-11256-PBS

T.C. GROUP, LLC, THE CARLYLE
GROUP, CARLYLE CAPITAL
CORPORATION, LTD., CARLYLE
INVESTMENT MANAGEMENT, LLC,
and DAVID M. RUBENSTEIN,

    Defendants.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### PLAINTIFF MICHAEL HUFFINGTON'S MEMORANDUM OF LAW IN SUPPORT OF HIS OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF STANDING AND FOR FAILURE TO STATE A CLAIM

MICHAEL HUFFINGTON
By his attorneys,

Paul V. Curcio (BBO #545554)
Pamela E. Berman (BBO# 551806)
Philip Y. Brown (BBO #552366)
Edward F. Whitesell (BBO #644331)
Rory Z. Fazendeiro (BBO #648334)
**ADLER POLLOCK & SHEEHAN P.C.**
175 Federal Street
Boston, MA 02110
(617) 482-0600

Dated: October 30, 2009

## TABLE OF CONTENTS

**Heading**                                                                                              **Page**

**Preliminary Statement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**Argument** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.    MR. HUFFINGTON HAS STANDING TO BRING THIS ACTION . . . . . . . . . . . . . . . . . 2

      A.    Mr. Huffington Has Standing to Bring Counts I and III Because at the
Time of The Purchase He Was the Sole Trustee and Beneficiary of Lanai
and Thus Suffered the Injury. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    Mr. Huffington Has Standing For All Claims Because He Adequately
Alleges Injury In Fact, Causation, and Redressability Of His Injury. . . . . . . . . . 5

II.   MR. HUFFINGTON ALLEGES SUFFICIENT FACTS AND LEGAL
ELEMENTS TO SUPPORT EACH OF HIS THREE CLAIMS . . . . . . . . . . . . . . . . . . . . . 7

      A.    Mr. Huffington States a Claim Under M.G.L. c. 110A, §410. . . . . . . . . . . . . . . 8

      B.    Mr. Huffington States a Claim for Negligent Misrepresentation . . . . . . . . . . . . .12

            1.    Mr. Huffington Has Adequately Pled Reliance . . . . . . . . . . . . . . . . . . . . 12

            2.    Mr. Huffington Has Adequately Pled Privity and Actual Knowledge
of His Reliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      C.    Mr. Huffington States a Claim Under M.G.L. c. 93A . . . . . . . . . . . . . . . . . . . . 15

      D.    Mr. Huffington Has Stated a Claim Against Carlyle and CIM . . . . . . . . . . . . . .17

III.  THE MISREPRESENTATIONS ALLEGED BY MR. HUFFINGTON
ARE ACTIONABLE BECAUSE THEY ARE MATERIAL . . . . . . . . . . . . . . . . . . . . . . . . 18

      A.    The Alleged Misrepresentations Are Actionable Because They Are
Statements of Fact, Not Opinion or "Mere Puffery," and Any Statement
Deemed to Be Opinion Is Still Actionable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      B.    The "Bespeaks Caution" Doctrine Is Applicable . . . . . . . . . . . . . . . . . . . . . . . . 23

**Conclusion.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

Adams v. Hyannis Harborview, Inc., 838 F. Supp. 676 (D. Mass. 1993) ................................... 18

Admiralty Fund v. Hugh Johnson & Co., 677 F.2d 1301 (9th Cir. 1982) ................................... 18

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) ............................................................................... 7

Begelfer v. Najarian, 381 Mass. 177 (1980) ........................................................................... 16

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ............................................................... 7, 9, 17

Bendaoud v. Hodgson, 578 F. Supp. 2d 257 (D. Mass. 2008) ....................................................... 5

Berenson v. National Financial Services, LLC, 403 F. Supp. 2d 133 (D. Mass. 2005) ............... 15

Birnbaum v. Newport Steel Corp., 193 F. 2d 461 (2d Cir. 1956) ............................................... 3, 4

Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975) ................................................... 3

Brown v. Gerstein, 17 Mass. App. Ct. 558 (1984) .................................................................... 16

Brumbaugh v. Wave Systems Corp., 416 F. Supp. 2d 239 (D. Mass. 2006) ................................. 20

Casella v. Webb, 883 F. 2d 805 (9th Cir. 1989) ........................................................................ 22

Craftmatic Sec. Litig. v. Kraftsow, 890 F. 2d 628 (3d Cir. 1989) ............................................... 18

DeBruyne v. Equitable Life Assur. Soc'y, 920 F. 2d 457 (7th Cir. 1990) ................................... 19

Duperier v. Texas State Bank, 28 S.W. 3d 740 (Tex. App. 2000) ............................................... 22

Eagle Fund, Ltd. v. Sarkans, 63 Mass. App. Ct. 79 (2005) ................................................... 10, 19

Glassman v. Computervision Corp., 90 F. 3d 617 (1st Cir. 1996) ............................................... 21

Gross v. Diversified Mortg. Investors, 431 F. Supp. 1080 (D.C.N.Y. 1977) ........................... 3, 4

Hackford v. First Sec. Bank of Utah, N.A., 521 F. Supp. 541 (D. Utah. 1981) ........................... 4

Hurley v. FDIC, 719 F. Supp. 27 (D. Mass. 1989) .................................................................... 12

In re Access Cardiosystems, Inc., 404 B.R. 593 (Bankr. D. Mass. 2009) ........................... 18, 21

In re Computervision Corp. Sec. Litig., 869 F. Supp. 56 (D. Mass. 1994) .................................. 13

In re Time Warner Inc. Sec. Litig., 9 F. 3d 259 (2d Cir. 1993) .................................................... 13

James v. Gerber Products Co., 483 F. 2d 944 (6th Cir. 1973). ...................................................... 3

Katin v. Nat'l Real Estate Info. Serv., Inc., 2009 WL 929554 (D. Mass. March 31, 2009).......... 3

Lawson v. Affirmative Equities, Co., L.P., 341 F. Supp. 2d 51 (D. Mass. 2004). ....................... 21

Lucas v. Downtown Greenville Investors Ltd. Partnership, 284 Ill. App. 3d 37 (1996).............. 23

Lucia v. Prospect Street High Income Portfolio, Inc., 36 F. 3d 170 (1st Cir. 1994) ................... 18

Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43 (2004) .......................................... passim

Massachusetts Laborers' Health & Welfare Fund v. Philip Morris, Inc., 62 F. Supp. 2d 236
    (D. Mass. 1999)........................................................................................................................ 13

McMahan v. Wherehouse Entm't, Inc., 900 F. 2d 576 (2d Cir. 1990) ........................................ 19

Meason v. Gilbert, 236 Ga. 862 (1976)). .................................................................................... 10

Nisselson v. Lernout, 2004 WL 3953998 (D. Mass. Aug. 9, 2004) .............................................. 2

Pearce v. Duchesneau Group, 392 F. Supp. 2d 63 (D. Mass. 2005)...................................... 21, 22

Planned Parenthood Fed'n of Am., Inc. v. Problem Pregnancy of Worcester, Inc., 398 Mass.
    480 (1986).............................................................................................................................. 16

Platten v. HG Bermuda Exempted Ltd., 437 F. 3d 118 (1st Cir. 2006)....................................... 11

PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593 (1975)........................................... 14

Purity Supreme, Inc. v. Attorney Gen., 380 Mass. 762 (1980) ................................................... 15

Quincy Co-Operative Bank v. A.G. Edwards & Sons, Inc., 655 F. Supp. 78 (D. Mass. 1986) ..... 3

Roer v. Oxbridge Inc., 198 F. Supp. 2d 212, (E.D.N.Y. 2001) ................................................... 22

Rosenbaum Capital LLC v. Boston Communications Group, Inc., 445 F. Supp. 2d 170
    (D. Mass. 2006)....................................................................................................................... 23

Schubach v. Household Fin. Corp., 375 Mass. 133 (1978) ......................................................... 15

Shaw v. Digital Equip. Corp., 82 F. 3d 1194 (1st Cir. 1996). ............................................... 23, 24

TSC Indus., Inc. v. Northway, 426 U.S. 438 (1976) .............................................................. 18, 19

Valley Stream Teachers Federal Credit Union v. Commissioner of Banks, 376 Mass. 845
   (1978) ............................................................................................................................... 3

Vittands v. Sudduth, 49 Mass. App. Ct. 401 (2000)…………………………………………6

Young v. Deloitte & Touche, LLP, 2004 WL 2341344 (Mass. Super. Ct. Sept. 20, 2004) ......... 12

**Rules of Civil Procedure**                                                         **Page**

Massachusetts Federal Rules of Civil Procedure

Fed. R. Civ. P. 8............................................................................................................... 2, 6, 7

Fed. R. Civ. P. 12(b)(6)....................................................................................................... 1, 2, 6

Fed. R. Civ. P. 17(a)(3)………………………………………………………………………6
Fed. R. Civ. P. 56............................................................................................................... 2

**Statutes**                                                                         **Page**

Massachusetts General Laws

M.G.L. c. 93A, §11 ............................................................................................... 2, 14, 15, 16, 17

M.G.L. c. 110A, §410 ................................................................................................... 3, 6, 7

M.G.L. c. 110A, §410(a)(2)............................................................................ 2, 6, 7, 8, 10, 15, 20, 22

M.G.L. c. 110A, §410(g) ................................................................................................... 11

Plaintiff Michael Huffington ("Mr. Huffington") hereby opposes the Motion to Dismiss for Lack of Standing and For Failure to State a Claim (the "Standing Motion") of defendants TC Group, LLC ("TC Group"), The Carlyle Group ("Carlyle"), Carlyle Investment Management, LLC ("CIM") and David M. Rubenstein ("Mr. Rubenstein") (collectively, the "Moving Parties").

## Preliminary Statement

In their Standing Motion, the Moving Parties allege that Mr. Huffington, who personally lost $20,000,000 dollars as a result of their actions, lacks standing and that he failed to plead the legal elements and facts required to support his claims. Mr. Huffington has standing to assert each of the claims because he was the grantor, trustee and beneficiary of the Lanai Living Trust ("Lanai"), the named purchaser, a trust that has since been revoked with the assets reverting back to Mr. Huffington. In other words, under the cover of legal sophistry, the Moving Parties essentially argue that there is no purchaser. As is specifically alleged in the complaint, each of the misrepresentations in question was made to Mr. Huffington, and it was obvious from the start that it was Mr. Huffington's money that was being invested.

The Moving Parties fare no better with respect to their arguments that Mr. Huffington has failed to state a claim. Given the breadth and detail of the decision of the Massachusetts Supreme Judicial Court (the "SJC") in Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43 (2004) ("Marram I"), and the similarities between Marram I and this case, the Moving Parties face an uphill battle in their attempt to construct a viable argument for dismissal under Rule 12(b)(6). This they fail to do. Mr. Huffington adequately pleads the necessary elements of each of his claims, and he also pleads facts that, when presumed to be true, are sufficient to prove those claims.

The remainder of the Moving Parties' Standing Motion is the legal equivalent of the kitchen sink. The Moving Parties set forth arguments that are premature at this stage

(questioning, for example, whether the statements are material or whether they are puffery), which are pieced together to challenge the factual basis for the Complaint, rather than its legal sufficiency. In other words, much of their memorandum is devoted to arguments that Mr. Huffington cannot prove his case, not that he cannot state it. While couching these arguments in terms of a failure to plead adequately, what the Moving Parties try to do is to transform the Rule 8 pleading standard into a Rule 56 standard, before any discovery has occurred. These arguments are inappropriate for consideration on a motion to dismiss, and given the decision in Marram I, are likely to be inappropriate for summary judgment as well. In any event, even to the extent that the Court determined after reviewing the evidence that certain of these misrepresentations are puffery or opinion, they still remain actionable because they are false, or inconsistent with facts known to the Moving Parties. Regardless, Mr. Huffington has sufficiently alleged facts to support his claim that the misrepresentations of the Moving Parties are material, are not opinion or puffery and are not covered by the "bespeaks caution" doctrine.

In short, the Standing Motion should be denied in its entirety.

<u>**Argument**</u>

## I.   MR. HUFFINGTON HAS STANDING TO BRING THIS ACTION

The central tenet underlying the Moving Parties' challenge to standing is that Mr. Huffington cannot bring these claims because he did not purchase the Carlyle Capital shares, Lanai did.[1] They mistakenly caution the Court that standing for Mr. Huffington risks double recovery (for he and Lanai),[2] wholly ignoring the fact that Lanai was revoked, and thus Mr.

---

[1] The Moving Parties challenge Mr. Huffington's standing on the following three grounds: (1) with respect to all three claims, because he failed to allege injury in fact, causation, or redressability of an alleged injury; (2) with respect to Count I (§410(a)(2)), because Mr. Huffington was not the "purchaser"; and (3) with respect to Count III (c. 93A, § 11) because of a purported failure to allege a personal loss of money or property.

[2] The danger of duplicative recovery present in Nisselson v. Lernout, 2004 WL 3953998, at *4-5 (D. Mass. Aug. 9, 2004), a case relied on by the Moving Parties, is not relevant here because Lanai does not exist, and Mr. Huffington is the only damaged party.

Huffington is the only existing party that can bring this action. If the Moving Parties were correct that Mr. Huffington does not have standing because he is not technically the "purchaser," no one can seek redress for the wrongful conduct alleged in this case.

### A.   Mr. Huffington Has Standing To Bring Counts I and III Because At The Time of the Purchase He Was the Sole Trustee and Beneficiary of Lanai And Thus Suffered The Injury

"[T]he doctrine of standing 'requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal court jurisdiction.'" Katin v. Nat'l Real Estate Info. Serv., Inc., 2009 WL 929554, at *3 (D. Mass. March 31, 2009) (emphasis in original and citations omitted). When faced with the specific issue asserted by the Moving Parties here, courts have consistently held that a trust beneficiary has standing to bring suit for harm sustained in connection with a trust's purchase or sale of securities. See, e.g., Gross v. Diversified Mortg. Investors, 431 F. Supp. 1080, 1093 (D.C.N.Y. 1977). A trust beneficiary has standing to sue because "[he] is the only person who was actually harmed by the security transaction in question and [is] thus a de facto buyer." Gross, 431 F. Supp. at 1093 (citing James v. Gerber Products Co., 483 F.2d 944, 948 (6th Cir. 1973)).

Applying this rule here, Mr. Huffington has standing to bring this action in his individual capacity because at the time of the purchase he was the sole beneficiary of Lanai.[3] See Affidavit of Huffington, Ex. A. Although the protections of antifraud provisions under the federal securities laws are generally limited to those who <u>actually</u> purchase or sell securities, see Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 749 (1975) (affirming the rule in Birnbaum v.

---

[3] Although this rule is often applied in cases involving the federal securities laws, it would apply equally to Mr. Huffington's Blue Sky law claim under M.G.L. c. 110A, §410. The Massachusetts Blue Sky laws were derived from federal securities laws, and their interpretation and application must be guided by the interpretation of those federal laws. See Quincy Co-Operative Bank v. A.G. Edwards & Sons, Inc., 655 F. Supp. 78, 87 (D. Mass. 1986) (citing Valley Stream Teachers Federal Credit Union v. Commissioner of Banks, 376 Mass. 845, 857-858 (1978)).

<u>Newport Steel Corp.</u>, 193 F.2d 461 (2d Cir. 1956)), this rule does not apply to the beneficiary of a trust. Mr. Huffington, "as sole beneficiary and with reserved powers under [Lanai], is not like the plaintiffs in <u>Birnbaum</u> who were not only non-sellers and non-purchasers but were uninvolved directly or indirectly in the sale." <u>Gross</u>, 431 F. Supp. at 1093. Mr. Huffington was not a bystander, but was intimately involved – indeed the sole person involved – in all aspects of the investment. The misrepresentations at issue were made directly to Mr. Huffington (many before the Moving Parties knew of Lanai's existence), the investment decision was solely his to make, and he funded the investment with his own personal savings funds.[4]   Moreover, the Carlyle Capital investment was only available to Mr. Huffington (and thus Lanai) because <u>Mr. Huffington</u> was a "qualified purchaser" and "accredited investor" as required by applicable law.[5] It is disingenuous for the Moving Parties to now assert that Mr. Huffington is not a purchaser, when their own subscription documents and applicable law required Mr. Huffington to be a "qualified purchaser" in order for Lanai to acquire the shares. For these reasons, Mr. Huffington is not within the group of plaintiffs excluded under <u>Birnbaum</u>.

Likewise, Mr. Huffington has standing because, as the sole beneficial owner of the securities held by Lanai, it was he who was injured. <u>See</u> <u>Hackford v. First Sec. Bank of Utah, N.A.</u>, 521 F. Supp. 541, 549 (D. Utah 1981) (trust beneficiaries were injured and thus had standing to bring action in connection with sale of securities held by trust). As a "de facto buyer," and the sole person harmed, "'[i]t would be exalting form over substance' to hold that the purchase by [Lanai] was not [Huffington's] purchase." <u>Gross</u>, 431 F. Supp. at 1093 (<u>quoting</u> <u>Heyman v. Heyman</u>, 356 F. Supp. 958 (S.D.N.Y. 1973)). Courts "should not be loath to look behind the legal technicalities of a transaction in order to protect those whose interests the

---

[4] Complaint at ¶¶ 16, 17, 18, 20, 62; Huffington Aff. at ¶¶ 4, 5.
[5] Subscription Agreement at Q-4, Q-6, Q-7, Q-9.

[securities laws] w[ere] designed to safeguard." Id. Thus, Mr. Huffington has standing as a "purchaser" because, as the sole beneficiary of Lanai, he was directly injured. For this same reason, and contrary to the assertion of the Moving Parties, Mr. Huffington also has standing to bring his c. 93A claim.

### B. Mr. Huffington Has Standing For All Claims Because He Adequately Alleges Injury in Fact, Causation, and Redressability of His Injury

The Moving Parties further challenge standing based on an alleged failure to satisfy the three constitutional requirements for standing: injury in fact, causation and redressability. The Moving Parties' argument fails because it is based solely on the flawed theory addressed above – that Mr. Huffington is not a purchaser. To satisfy the first element, the plaintiff must suffer "an injury that is concrete, particularized, and actual or imminent . . . ." Bendaoud v. Hodgson, 578 F. Supp. 2d 257, 262 (D. Mass. 2008). Despite the Moving Parties' contention that Mr. Huffington was not injured because he is not a "purchaser," he was the sole beneficiary of Lanai at the time of the purchase, and the only person with any involvement in the investment process. The very misconduct that drives this case occurred while the Moving Parties solicited Mr. Huffington, inducing his investment in a fund that was falsely portrayed to him as being "conservative," "low risk" and suited to his investment criteria. Mr. Huffington suffered an injury that was "actual" and "concrete" because his entire $20,000,000 investment, which came from his personal savings funds, was lost in the wake of Carlyle Capital's collapse.[6]

Mr. Huffington also satisfies the second element, causation, which in this context requires an allegation of an injury that is "fairly traceable" to the defendant's misconduct. Id. The causation requirement is plainly alleged throughout the Complaint.[7] In fact, the direct connection between the Moving Parties' misconduct and Mr. Huffington's loss is laid out in the

---

[6] Complaint at ¶¶ 29, 47, 57, 59, 60, 62, 64, 65, 66, 67, 68, 72, 75, 76, 80; Huffington Aff. at ¶¶ 4, 5.
[7] Complaint at ¶¶ 29, 62, 60, 68, 72, 76, 80.

first introductory sentence of the Complaint:

> This is a Complaint to recover damages incurred by the plaintiff, Mr. Huffington, as a result of the sale of securities by means of an untrue statement of material fact or omission to state a material fact . . . .[8]

In light of these numerous, detailed allegations, Mr. Huffington's loss is much more than "fairly traceable" to Moving Parties' misconduct. Finally, Mr. Huffington satisfies the redressability element because a favorable judicial decision will provide redress for his injury. There is a distinct connection between the loss of Mr. Huffington's $20,000,000 investment (his injury), and the monetary damages he seeks in recouping his investment (the judicial relief).[9] Moreover, there is no chance of duplicative recovery because Lanai, the only other potentially aggrieved party, no longer exists.[10]

In short, because a favorable decision will provide a monetary recovery to redress Mr. Huffington's financial loss, the redressability element is unquestionably satisfied.

---

[8] Complaint.

[9] The remedy sought by Mr. Huffington under §410 entitles him to "the consideration paid for the security, together with interest at six per cent per year from the date of payment, costs, and reasonable attorneys' fees." M.G.L. c. 110A, §410(a)(2).

[10] Both §410 and the federal rules of civil procedure act as a backstop against the argument that the case should be dismissed because the purchaser no longer exists. Section 410(d) states that "[e]very cause of action under this statute survives the death of any person who might have been a plaintiff or defendant." A plain reading of the words "who might have been a plaintiff or defendant" is that the statute intends for the claims to continue and to be able to be prosecuted by any successor-in-interest of a deceased purchaser, even if that successor-in-interest succeeded to the interest prior to the filing of the lawsuit. By analogy, if the Court were to find that Mr. Huffington has no standing to bring the claim because Lanai was the purchaser, the purposes of the statute are served by allowing the claim to be prosecuted by Mr. Huffington as the successor-in-interest following the "death" of the trust through its revocation. By way of analogy, Fed. R. Civ. P. 17(a)(3) precludes dismissal where the real party in interest can be substituted for a named party that has no interest in the lawsuit. That is what Mr. Huffington did at the outset. Had he brought this case as the trustee of a defunct trust, there would be a motion to dismiss based on the lack of standing of a revoked trust. The complaint could then be amended to name Mr. Huffington as the real party in interest under Rule 17(a)(3). For example, in <u>Vittands v. Sudduth</u>, 49 Mass. App. Ct. 401, 409-410 (2000), a case where an issue as to whether a defendant nominee trust might not be a trust, the Appeals Court noted that under Mass. R. Civ. P. 17(a), dismissal was inappropriate where the real party in interest (i.e., the person who was the sole trustee and beneficiary "Sudduth") could be substituted as a party. The Appeals Court stated that "[w]hatever the outcome, Sudduth must join the Trust's suit or be substituted for the Trust as the real party in interest. [citation omitted] Sudduth must be permitted to do so, as her complaint may easily be amended, [citation omitted] and we are not inclined to dismiss an action because of a possible technical defect in pleading, particularly where, as here, there is ample reason to view Sudduth as the real party in interest." <u>Id</u>. The same logic should apply in this case and Mr. Huffington should be allowed to proceed with his action.

## II.    MR. HUFFINGTON ALLEGES SUFFICIENT FACTS AND LEGAL ELEMENTS TO SUPPORT EACH OF HIS THREE CLAIMS[11]

The Moving Parties seek to dismiss all Counts of the Complaint because they purportedly lack an essential factual or legal element, and are thus "alleged insufficiently" and subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  As set forth below, Mr. Huffington easily meets the Rule 8 "plain statement" standard.  He alleges all necessary elements to sustain recovery under each claim.  For these reasons, each of Mr. Huffington's claims is adequately plead and the Moving Parties' Rule 12(b)(6) motion should be denied.

To meet the liberal pleading standard set forth by the Supreme Court in Bell Atl. Corp. v. Twombly, a complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true."  550 U.S. 544, 556 (2007) (citations omitted).  The complaint need only provide a "'plain statement' that possesses enough heft to "sho[w] that the pleader is entitled to relief."  Id. at 557 (quoting Fed. R. Civ. P. 8).  The Rule 8 pleading standard does not require "detailed factual allegations," just more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. at 1949 (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

---

[11] As a threshold matter, the law of Massachusetts governs each of Mr. Huffington's three claims.  The Delaware choice of law clause in the Subscription Agreement does not apply, a point which the Moving Parties appear to concede, because it provides only that the "terms and provisions" of the Subscription Agreement are "governed, construed and enforced" under Delaware law.  As discussed in more detail in the opposition to the Motion to Dismiss for Improper Venue, Mr. Huffington's claims do not implicate the terms and provisions of the Subscription Agreement, but are instead based on misrepresentations and omissions of material fact that induced Mr. Huffington's investment in Carlyle Capital.  In addition to being generally inapplicable, the choice of law clause expressly carves-out the "'blue sky' laws of the jurisdiction in which the offering" was made, which in this case is Massachusetts.

### A.    Mr. Huffington States A Claim Under MGL c. 110A, §410

In Section III of their brief, the Moving Parties focus on two of five elements that they assert must be pled by Mr. Huffington in order to state a claim under M.G.L. c. 110A, §410(a)(2). In particular, they contend that Mr. Huffington must allege that "(1) the plaintiff did not know of the untruth of the representations, and (2) the defendant knew or should have known of their untruth."[12] In making this assertion, the Moving Parties misstate the SJC's holding in Marram I as well as the plain language of the statute itself. 442 Mass. at 52-54 (listing factors and outlining affirmative defenses); see also M.G.L. c. 110A, §410(a)(2).

The two alleged pleading requirements highlighted by the Moving Parties were determined by the SJC in Marram I to be affirmative defenses – with the burden shifted to the Moving Parties. 442 Mass. at 54. In discussing the "counterweight" to the Securities Act's "consumer-oriented focus," the SJC noted that the Act "specifically allows for two affirmative defenses in addition to a direct attack on one of the prima facie elements of a §410(a)(2) claim." Id. (emphasis added). These two affirmative defenses were identified by the SJC as: (1) actual knowledge of the buyer "that a representation is false or knows that existing information has been withheld"; and (2) lack of actual or constructive knowledge of the untruth or omission on the part of the seller. Id. (internal citations omitted).[13] In other words, under the holding in Marram I, the plaintiff only has the burden to prove, and thus plead, the prima facie elements of a §410(a)(2) claim: (1) that the defendant offered or sold a security; (2) in the Commonwealth; (3) by making any untrue statement of material fact or by omitting to state a material fact. Id. at

---

[12] Moving Parties' Memorandum at p. 29.

[13] Likewise, §410(a)(2) specifically identifies the seller's lack of actual or constructive knowledge as an affirmative defense, noting that a defendant is to be held liable where he "does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or admission." See also Marram, 442 Mass. at 52 (quoting §410(a)(2)).

52.[14]  Mr. Huffington has met his threshold burden to adequately allege these elements.

The Moving Parties do not, and in fact cannot, challenge the first of these two prima facie elements.  The Complaint describes in detail the facts surrounding the offer and subsequent sale of securities, as well as the fact that the misrepresentations were made to Mr. Huffington at his home in Boston,[15] that at least one of the misrepresentations was confirmed in a letter addressed to Mr. Huffington in Boston,[16] and that the offering materials (although irrelevant to the claim itself) were sent to him there.[17]  With respect to the third element, there are abundant facts in the Complaint that support the allegation that the representations were untrue and material to a reasonable investor, including Mr. Huffington.[18]  Mr. Huffington alleges that he was told, among other things, that this was a conservative investment that fit his needs, that it would not be "overleveraged" and that the "downside was very limited."[19]  He also alleges that these statements were untrue - for example, he alleges that the fund had an "extremely risky 32:1 leverage ratio (over 3,000 percent)" and that Mr. Rubenstein himself admitted that, "[i]n hindsight, the leverage was excessive."[20]  These factual allegations, as well as numerous others throughout the Complaint, are more than sufficient to meet the pleading standard set forth in Twombly.

Moreover, even if Mr. Huffington were required to plead facts that, if true, would defeat the Moving Parties' affirmative defenses, he has done so.  The Moving Parties first demand that Mr. Huffington allege facts to prove a negative – specifically, that he had no actual knowledge of

---

[14] Mr. Huffington is likewise not required to prove causation or damages.  See Marram I, 442 Mass at 58 n.24 ("the misrepresentation . . . need not be the cause of any loss").

[15] Complaint at ¶¶16-19.

[16] Complaint at ¶¶20-21.

[17] Complaint at ¶22.

[18] As discussed in more detail herein, the question of materiality is a mixed question of law and fact, more appropriate for a jury determination.

[19] Complaint at ¶¶16-18, 20, Attachment A.

[20] Complaint at ¶61.  This is only one of many examples of where Mr. Huffington has alleged misrepresentations made to him were untrue – the Complaint is rife with such examples.

the untruth of the misrepresentations made to him. Mr. Huffington specifically alleged that he did not know of the untruth of the statements[21] – in fact, he alleged that he would not have made the investment if he were aware of its risky nature.[22] Mr. Huffington also adequately alleged that each of the Moving Parties knew or should have known that the statements were false[23] – they were actively involved in establishing the fund,[24] Carlyle resources were available to Carlyle Capital and CIM,[25] the investment was presented as being part of The Carlyle Group,[26] and CIM, in particular, was responsible for managing the fund.[27]

In truth, the Moving Parties are simply trying to make an end run around the decision of the SJC in Marram I.[28] 442 Mass. at 56. That is, they attempt to reargue the principal issues resolved by the SJC (against them) – such as whether the written offering materials can defeat claims brought under §410(a)(2) as a matter of law. As stressed by the SJC, "the existence of contradictory written statements, in an integration clause or otherwise, does not provide a defense to the charge of preinvestment materially misleading oral statements." Id. at 55 (citations omitted and emphasis added).[29] The SJC made clear that this was not an issue for a

---

[21] Complaint at ¶71.

[22] Complaint at ¶62.

[23] The Moving Parties support their motion with the convoluted argument that Mr. Huffington cannot plead sufficient facts to defeat their affirmative defense of lack of actual or constructive knowledge because the Complaint admits that Carlyle employees were invested in Carlyle Capital. As noted above, this ignores the fact that this is their burden at trial. Moreover, the fact that Carlyle employees invested in Carlyle Capital does not refute, as a matter of law, the allegation that the Moving Parties were aware that their own misrepresentations were false. In the first instance, Carlyle employees were not the target of misrepresentations about the nature of Carlyle Capital. These Carlyle investors may have been interested in the high-risk, high-reward, overleveraged investment that Mr. Huffington sought to avoid. Furthermore, it is inconceivable that insiders of any of the Moving Parties could be completely ignorant about the investment strategy of their own fund.

[24] Complaint at ¶¶13-15.

[25] Complaint at ¶¶14-15.

[26] Complaint at ¶¶10-11, 18.

[27] Complaint at ¶5.

[28] The Moving Parties make a cursory attempt to distinguish the facts of this case from those of Marram I. However, the facts of the two cases are nearly identical - similar misrepresentations, similar offering materials relied upon by defendants and similar arguments considered and rejected by the SJC.

[29] In footnote 32 of their brief, the Moving Parties attempt to narrowly construe the holding of Marram I such that it would be limited to integration clauses. This is belied by the express language of the decision, which states "in an integration clause or otherwise."

motion to dismiss (and implied that it would be inappropriate for summary judgment) when it held that "[a]t trial the defendants may wish to introduce the written representations in the offshore documents to refute [plaintiff's] allegations." See id. at 56 (emphasis added) (citing Meason v. Gilbert, 236 Ga. 862, 864 (1976)). Such written materials have only "evidentiary value" and are "insufficient . . . to support the defendants' motion to dismiss the securities claim." Id.

As was the case in Marram I, "it is far from clear that the representations in the [offering materials] contravene the specific, detailed oral representations" made to Mr. Huffington. Id. In Marram I, a written statement – that the fund "may" be concentrated in one industry to maximize returns – was insufficient to dismiss a claim based on the oral representation that the fund would be diversified. Id. at 56; see also Eagle Fund, Ltd. v. Sarkans, 63 Mass. App. Ct. 79, 81, 84 n.3 (2005) (broad representation that fund invested in markets in countries around the world "as determined by Investment Advisor and Manager" insufficient to dismiss claim based on misrepresentation that fund would not be invested in Russia).   Likewise here, broad statements about the possibly high degrees of leverage and or risk are not necessarily contravened by a specific oral misrepresentation that this would not be the case.  In other words, just because the written agreements say that the seller can do something does not mean that a purchaser may not base an action on the seller's pre-investment promise not to do so.  To allow a seller of securities free reign to make oral misrepresentations by simply including broad-sweeping provisions in offering materials would "thwart the very objective of the statute and violate declared public policy of this state." Id. at 57 (citations omitted).  Like other contract provisions, such as an integration clause or an indemnification provision, these open-ended and broad-sweeping protections for sellers of securities, if allowed to be grounds for dismissal rather than evidence for a fact finder, would act as a waiver of a plaintiff's rights in violation of the Securities Act's

11

anti-waiver provision, §410(g).[30] See id. at 56-57.

In short, Mr. Huffington adequately pled facts to support his claim that the Moving Parties offered or sold securities in the Commonwealth by means of a material misrepresentation or omission. For this reason, the Standing Motion should be denied.

**B.    Mr. Huffington States A Claim For Negligent Misrepresentation**

In order to state a claim for negligent misrepresentation, a plaintiff must allege that the defendant: "(1) made false statements of material fact (2) to induce plaintiff[] to enter into the Agreement, and (3) that [plaintiff] reasonably relied on those statements to [his] detriment." Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 132 (1st Cir. 2006). Under Massachusetts law, a plaintiff must also allege either privity or actual knowledge by the defendant of the plaintiff's reliance on the misrepresentations. See Hurley v. FDIC, 719 F. Supp. 27, 34 (D. Mass. 1989). The Moving Parties do not contend (nor can they) that the Complaint fails to allege either of the first two elements. Instead, the Moving Parties rely on the third element, arguing that Mr. Huffington has not sufficiently alleged: (a) that he actually and reasonably relied on the misrepresentations; and (b) either privity or the Moving Parties' actual knowledge of his reliance.

**1.    Mr. Huffington Has Adequately Pled Reliance**

The pre- and post-investment misrepresentations (and omissions) on which Mr. Huffington relied are set forth in detail throughout the Complaint, in at least sixteen (16) different paragraphs.[31] In paragraph 75 of the Complaint, Mr. Huffington alleges that he "relied

---

[30] The anti-waiver provision is discussed in detail in the context of the forum selection clause in Mr. Huffington's opposition memorandum to the Moving Parties' Motion to Dismiss for Improper Venue. It has equal applicability here, where the Moving Parties rely on broad contract provisions to claim that Mr. Huffington has waived his right to bring Count I. In the interest of brevity, rather than restate the relevant case law contained in that brief, Mr. Huffington incorporates it by reference herein.

[31] For examples of the alleged pre-investment misrepresentations: Complaint, ¶¶ 16, 17, 18, 19, 20, 22. For examples of the alleged post-investment misrepresentations: Complaint, ¶¶ 29, 31, 34, 35, 36, 40, 41, 43, 57, 60.

on these misrepresentations first by investing in the Funds, and later by remaining in the Fund until it was dissolved." In paragraph 29, Mr. Huffington alleges that "[b]ased on the representations of Mr. Rubenstein that the Fund was conservative . . . Mr. Huffington ultimately decided to increase his investment to $20,000,000 . . . ." Still, further, in paragraph 62, Mr. Huffington alleges that "[h]ad he been aware of the potential for this amount of risk in a Fund that he was assured was 'conservative,' he would not have made the investment." Such allegations are enough to adequately plead reliance. See Young v. Deloitte & Touche, LLP, 2004 WL 2341344, at *5 (Mass. Super. Ct. Sept. 20, 2004) (allegation that plaintiff "justifiably relied upon [defendant's] false statements and misrepresentations" was enough to defeat Rule 12(b)(6) motion).

The Moving Parties also challenge the reasonableness of Mr. Huffington's reliance. "The issue of whether reliance is reasonable is ordinarily a question of fact for a jury." Massachusetts Laborers' Health & Welfare Fund v. Philip Morris, Inc., 62 F. Supp. 2d 236, 242 (D. Mass. 1999). Judgment as a matter of law is appropriate only where no reasonable jury could find that the plaintiff's reliance was reasonable. See id. This issue "is not ripe for decision at this preliminary stage" of the litigation, without the benefit of any discovery. Marram I, 442 Mass. at 60. Moreover, given the detailed facts alleged in the Complaint, a jury could find that Mr. Huffington's reliance was reasonable. Thus, the negligent misrepresentation claim survives.

### 2. Mr. Huffington Has Adequately Pled Privity and Actual Knowledge of His Reliance

In just two sentences of their Memorandum of Law, the Moving Parties claim that Mr. Huffington fails to allege privity. The Moving Parties contend that only Lanai meets the privity requirement. This argument is overly-technical and ultimately incorrect. Mr. Huffington is in privity with the Moving Parties because the misrepresentations were made directly to him, he

13

relied upon the misrepresentations in making the investment decision, the investment decision was solely his to make, and the securities were purchased with his own personal funds.[32] Accordingly, the fact that the securities were purchased in the name of Lanai does not mean there is no privity between Mr. Huffington and the Moving Parties.

The privity element is satisfied because the misrepresentations at the crux of the case were intentionally directed at Mr. Huffington to induce <u>his</u> investment. <u>See, e.g.</u>, <u>In re Computervision Corp. Sec. Litig.</u>, 869 F. Supp. 56, 65 (D. Mass. 1994) (dismissing claim but recognizing equivalence of privity as intentional direction of misrepresentation to the plaintiffs); <u>In re Time Warner Inc. Sec. Litig.</u>, 9 F. 3d 259, 271 (2d Cir.1993) (privity satisfied by "intentional direction of misrepresentation" at particularized group).  The misrepresentations were not public disseminations (where reliance might not be foreseeable), but were made solely to Mr. Huffington as part of a targeted sales pitch through face-to-face meetings and written correspondence.[33]  Several of the misrepresentations came directly from Mr. Rubenstein, who acted on behalf of Carlyle Capital, The Carlyle Group and TC Group, while other misrepresentations and omissions were from Mr. Stomber, the "head" of Carlyle Capital.[34] Each misrepresentation was purposefully directed at Mr. Huffington to "develop a relationship with [him]" and induce his investment in Carlyle Capital, then to convince him into holding his shares until the fund ultimately collapsed.[35]  These allegations are sufficient to satisfy the privity requirement.

---

[32] Complaint at ¶¶16-18, 20, 29, 32-33, 62, 67-68, 75.
[33] Mr. Huffington also alleges that the Moving Parties had actual knowledge of his reliance on misrepresentations concerning the "conservative" and "low-risk" nature of the investment.  As alleged in the Complaint, this was made clear during the initial discussions and meetings between Mr. Huffington and Mr. Rubenstein.  In response to Mr. Huffington's "cautionary note about investment risk, Mr. Rubenstein indicated that he would check to see if Carlyle might have any investment vehicles available that would be suitable for someone with Mr. Huffington's risk profile."  Complaint at ¶¶ 10, 11, 16, 17.
[34] Complaint at ¶¶ 16, 17, 20, 36, 40, 41, 57.
[35] Complaint at ¶¶ 29, 40, 43, 57, 62.

### C.    Mr. Huffington States A Claim Under M.G.L. c. 93A

The Moving Parties challenge Mr. Huffington's c. 93A claim based on two separate assertions: (1) he alleges no additional evidence of bad faith or malice; and (2) he is an "individual consumer" who may not assert a c. 93A claim under section 11. Although they label their arguments as a Rule 12(b)(6) pleading deficiency, their true contention is that Mr. Huffington will not prevail on his c. 93A claim at trial. Regardless of how these arguments are framed, Mr. Huffington adequately pled his c. 93A claim, and any challenge to the <u>sufficiency of his evidence</u> is putting the proverbial cart before the horse.

First, the basic elements of a c. 93A claim are adequately pled. In order to state a claim under c. 93A, Mr. Huffington must allege that the complained-of misconduct constituted an unfair and deceptive act or practice that falls within the penumbra of common-law, statutory, or other established concept of unfairness. See <u>PMP Assocs., Inc. v. Globe Newspaper Co.</u>, 366 Mass. 593, 596 (1975). Mr. Huffington overcomes this minimal burden because he alleged that the Moving Parties' wrongful acts "constitute [] unfair or deceptive business act[s] or practice[s] proscribed by . . . c. 93A, §11.[36]

The Moving Parties ask this Court to make a <u>determination</u> of whether certain conduct is unfair and deceptive. To make this finding, "[t]he <u>circumstances of each case must be analyzed</u>, and unfairness is to be measured not simply by determining whether particular conduct is lawful (or unlawful, we now add) apart from M.G.L. c. 93A, but also by analyzing the effect of the conduct on the public (or the consumer)." <u>Berenson v. National Financial Services, LLC</u>, 403 F. Supp. 2d 133, 149 (D. Mass. 2005) (<u>quoting</u> <u>Schubach v. Household Fin. Corp.</u>, 375 Mass. 133, 137 (1978) (emphasis added))). Simply put, such a determination is premature at this stage.

---

[36] Complaint at ¶ 78.

Notwithstanding, the fact that this argument is premature, the allegations in this case fall within the definition of "unfair trade practices" adopted by the SJC:

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).

Purity Supreme, Inc. v. Attorney Gen., 380 Mass. 762, 777 (1980) (citations omitted). Here, simply by asserting his claim under §410(a)(2), Mr. Huffington contends that the Moving Parties' misconduct offends public policy relating to the offer and sale of securities. Moreover, the fact that the investment was so ill-suited to Mr. Huffington's stated investment criteria is sufficient to support his c. 93A claim.

Second, Mr. Huffington properly pled his cause of action under section 11. Section 11 permits suits by "any person who engages in the conduct of any trade or commerce" and who suffers "loss of money or property" as a result of "the use or employment by another person who engages in any trade or commerce of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by Section two . . . ." M.G.L. c. 93A, §11.

Mr. Huffington adequately pled facts to meet these elements. In paragraph 79, Mr. Huffington alleges that "[a]t all relevant times hereto, the parties were businesses engaged in trade or commerce within the Commonwealth of Massachusetts." At this stage of the litigation, the only question is whether Mr. Huffington adequately alleged that he engaged in the conduct of any trade or commerce. He did. The question before the Court is not whether the weight of the evidence supports such a finding;[37] whether a plaintiff engaged in trade or commerce is a

---

[37] The Moving Parties argue that Mr. Huffington fails to allege facts necessary to support a §11 claim because his purchase was that of individual consumer and not as part of a commercial transaction. See Moving Parties' Memo. of Law, p. 38-39. However, the Moving Parties offer no support for this assertion, and it should be rejected on that basis alone.

question for the trier of fact.  See, e.g., Planned Parenthood Fed'n of Am., Inc. v. Problem Pregnancy of Worcester, Inc., 398 Mass. 480, 493 (1986) (each case requires examination of its own circumstances to determine whether it arose in a "business context"); Begelfer v. Najarian, 381 Mass. 177, 190 (1980) ("business context" test requires "assess[ing] the nature of the transaction, the character of the parties involved, and the activities engaged in by the parties"); Brown v. Gerstein, 17 Mass. App. Ct. 558, 570-71 (1984) (concluding that c. 93A should have been decided on the merits because whether plaintiffs were involved in trade or commerce is a question of fact).

Even at this early juncture, the undisputed facts establish that Mr. Huffington was engaged in trade or commerce when he purchased the securities.  The mere fact that Mr. Huffington invested $20,000,000 in Carlyle Capital demonstrates that he is not a passive investor.  In order to be eligible for the investment, Mr. Huffington had to be an "accredited investor" and "qualified purchaser."[38]  Furthermore, under Carlyle Capital's own verification procedure, Mr. Huffington qualified as a "Professional Investor."  When considering these facts alone, Mr. Huffington adequately pled his claim under c. 93A, §11.

**D.    Mr. Huffington Has Stated A Claim Against Carlyle And CIM**

In the final section of their memorandum of law, the Moving Parties argue that Mr. Huffington fails to state a claim against two of the defendants: (1) Carlyle, because it is merely a trade name of the T.C. Group; and (2) CIM, because Mr. Huffington has failed to allege any wrongdoing on its part.  With respect to Carlyle, Mr. Huffington does not merely alleges that it is a trade name of the T.C. Group, but also that it "holds itself out as a private partnership[39] owned

---

[38] Subscription Agreement, at Q-4, Q-6, Q-7.
[39] There is a limited partnership formed under the laws of the State of Delaware named "The Carlyle Group, L.P." that is reported as being in good standing by the Delaware Secretary of State.  Discovery is necessary to determine whether this limited partnership is the "private partnership" described on The Carlyle Group website.  Should discovery reveal that The Carlyle Group is, in fact, a registered Delaware limited partnership, Mr. Huffington will

17

by Carlyle senior management and two institutional investors" and describes itself as "an
association of entities affiliated with the T.C. Group."[40]  These allegations were based directly
upon information publicly available on The Carlyle Group website, www.carlyle.com.
Furthermore, Mr. Huffington alleges in the Complaint that Mr. Rubenstein acted on behalf of
Carlyle when he made his pitch for Mr. Huffington's investment – in fact, Carlyle Capital was
not even in existence at the time of the first meeting.[41]  Mr. Huffington further alleges that Mr.
Rubenstein pitched Carlyle Capital as a Carlyle fund,[42] presented him with a PowerPoint
presentation describing Carlyle's investment strategy[43] and made misrepresentations on Carlyle
letterhead.[44]

With respect to CIM, Mr. Huffington adequately alleged that it was involved in, and
responsible for, the post-investment misrepresentations that give rise to the claims.  Carlyle
Capital is merely an investment fund; the management of the investments is handled by CIM,
which derived fees as a result.[45]  Misrepresentations concerning the investment strategy of
Carlyle Capital, such as the sufficiency of the liquidity cushion, can be tied directly to CIM as
the entity making those decisions.  Mr. Huffington further alleged that CIM is an affiliate of T.C.
Group, and thus part of Carlyle.[46]

## III.    THE MISREPRESENTATIONS ALLEGED BY MR. HUFFINGTON ARE ACTIONABLE BECAUSE THEY ARE MATERIAL

The Marram I decision again provides the operative test for determining materiality.  The
test is objective: "there must be a substantial likelihood that the disclosure of the omitted fact

---

amend his complaint to add the "L.P."  In any event, Mr. Huffington's factual allegation that The Carlyle Group is a
partnership is sufficient to survive a motion to dismiss under Twombly.
[40] Complaint at ¶3 (emphasis added).
[41] Mr. Huffington and Mr. Rubenstein first met in Iceland on July 4, 2006. (Complaint at ¶9)  Carlyle Capital was
formed on August 29, 2006.  (Complaint at ¶13)
[42] Complaint at ¶16.
[43] Complaint at ¶18.
[44] Complaint at ¶20, Attachment A.
[45] Complaint at ¶5.
[46] Complaint at ¶5.

would have been viewed by a reasonable investor as having significantly altered the 'total mix'

of information made available." Marram I, 442 Mass. at 57-58 (quoting Craftmatic Sec. Litig. v.

Kraftsow, 890 F.2d 628, 641 (3d Cir. 1989); see also TSC Indus., Inc. v. Northway, 426 U.S.

438, 449 (1976).[47]  Vital here is the fact that the "determination of materiality is a mixed

question of law and fact ordinarily decided by the trier of fact." Marram I, 442 Mass at 58

(emphasis added). "Only if the alleged misrepresentations or omissions are so obviously

unimportant to an investor that reasonable minds cannot differ on the question of materiality is it

appropriate for the district court to rule that the allegations are inactionable as a matter of law."

TSC Indus., 426 U.S. at 450 (emphasis added). Thus, the issue of materiality should not be

decided on a motion to dismiss, and should only be decided by the Court on a motion for

summary judgment in circumstances not present here. See Admiralty Fund v. Hugh Johnson &

Co., 677 F.2d 1301, 1307 (9th Cir. 1982) (materiality issues precluded summary judgment);

Lucia v. Prospect Street High Income Portfolio, Inc., 36 F.3d 170, 176 (1st Cir. 1994) (same).

Even if, *arguendo*, the Court was to consider the issue of materiality at this stage, the

Standing Motion must fail on this issue. As the SJC held in Marram I, the issues here are almost

self-evidently material to a reasonable investor:

> Here, the alleged oral misrepresentations relate to ... the suitability (risk profile)
> of the offshore fund given the investment goal of the investor (capital
> preservation).  It is difficult to imagine concerns more material to the reasonable
> investor when considered in the total mix of information that drives an investment
> decision.

Id. at 58 (emphasis added). "[A]llegations as to . . . risk and volatility . . . appear more likely to

raise a genuine issue of fact as to misrepresentation." DeBruyne v. Equitable Life Assur. Soc'y,

920 F.2d 457, 465-66 (7th Cir. 1990); see also Marram, 442 Mass at 59. Moreover, because oral

---

[47] This standard for materiality applies to all three claims.  See In re Access Cardiosystems, Inc., 404 B.R. 593,
646 (Bankr. D. Mass. 2009); see also Adams v. Hyannis Harborview, Inc., 838 F. Supp. 676, 687 (D. Mass.1993)
("this standard of materiality applies generally throughout the federal and Massachusetts securities laws").

misrepresentations intended to address a repeated concern of the investor "make untenable a conclusion that such exposure was of little importance" to the investor, the Moving Parties' emphasis on the fact that it was Mr. Huffington, and not Mr. Rubenstein, who used the word "conservative" is irrelevant. Eagle Fund, 63 Mass. App. Ct at 85. Thus, the misrepresentations alleged by Mr. Huffington meet the materiality test set forth in Marram I and TSC Indus..

A.     **The Alleged Misrepresentations Are Actionable Because They Are Statements of Fact, Not Opinion or "Mere Puffery," and Any Statement Deemed to Be Opinion Is Still Actionable**[48]

Determination as to whether a statement is opinion or "puffery" is inappropriate at the motion to dismiss stage. On similar allegations of "mere puffery" in Marram I, the SJC held that "it cannot be said conclusively at this early stage of the proceedings that such statements are unactionable 'mere puffery' as the defendants claim." 442 Mass at 62 (discussing opinion and puffery under c. 93A claim).[49] "[D]ismissals on this ground are increasingly rare," and this Court has noted that "it has been said that the 'puffing' concept in the securities context has all but gone the way of the dodo." Brumbaugh v. Wave Systems Corp., 416 F. Supp. 2d 239, 250 n.11 (D. Mass. 2006). Thus, this issue is inappropriate for resolution on a motion to dismiss.

Moreover, the misrepresentations alleged by Mr. Huffington are neither opinion nor puffery. The Complaint alleges fact-based pre-investment misrepresentations, including that: (1) Carlyle Capital "represented a lower risk than the other funds at Carlyle"; (2) Carlyle Capital

---

[48] In addition to arguing that the statements were neither factual nor material, the Moving Parties argue that they were not false. The determination of whether the statements were false is a particular factual issue preserved for the jury. Moreover, "[s]ome statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors." McMahan v. Wherehouse Entm't, Inc., 900 F.2d 576, 579 (2d Cir.1990). "For that reason, the disclosure required by the securities laws is measured not by literal truth, but by the ability of the material to accurately inform rather than mislead prospective buyers." Id.

[49] By way of example, Marram I included, among many others, statements that: (1) the "economy plays well into my philosophy" and was "rebounding"; (2) "We feel strongly that this is out of what has really been a bear market for the average stock"; (3) "We believe these losses will be recovered and there will be a resumption of good gains"; (4) "This shall be a good year! Normalcy and our kind of markets are returning!" 442 Mass. at 45 n.4. The SJC overturned the dismissal of claims based on these statements, in the process explicitly rejecting arguments that the statements were immaterial or mere puffery as a matter of law. See id. at 59, 62. The SJC also implicitly rejected the argument that the statements were non-actionable opinion as a matter of law. See id. at 58 n.24.

was "'a good investment' that 'would meet [Mr. Huffington's] criteria"[50] of "lower risk," "more

conservative" and "seek[ing] a much lower return on his investment in order to lower his

investment risk"; (3) " . . . the downside is very limited"; (4) "Carlyle 'used a conservative

investment approach focused on industries we know and in which we have a competitive

advantage'"; (5) "Carlyle sought 'low beta investments'"; (6) Carlyle would "[a]void

'overleverage and double digit pricing multiples'"; and (7) the "leverage was not a problem from

a risk standpoint" and that Mr. Huffington "should not be concerned about leverage."[51]  The

Complaint further alleges numerous fact-based post-investment misrepresentations that were

designed to keep investors in the fund, including that: (1) there was a sufficient liquidity cushion

for the amount of leverage; (2) the investment "remains safe and we are conservative"; (3) "the

securities are 100 cents on the dollar at maturity"; and (4) the securities "have NO credit risk."[52]

Finally, even if some of the statements here are deemed to be opinion statements, they are

still actionable.  Opinion statements and puffery must be "<u>so vague [and] so lacking in specificity</u>

. . . that no reasonable investor could find them important to the total mix of information

available."  <u>In re Access Cardiosystems, Inc.</u>, 404 B.R. 593, 647 (Bankr. D. Mass. 2009)

(emphasis added).  Courts analyzing Massachusetts law deem opinion and puffery statements to

be actionable in a variety of situations, many of which are present here.  For example, "such a

statement may be actionable where the speaker knew that the prediction opinion, judgment,

expectation, or future intention was false when it was made."  <u>Id.</u> at 642 (and cases cited); <u>see</u>

---

[50] The Moving Parties frequently change or shorten the allegations of the Complaint in an attempt to characterize them as opinion or puffery.  In the most egregious example, the Moving Parties change the allegation that Mr. Rubenstein said "it was a 'good investment' that would 'meet your criteria'" to "it was a 'good investment.'"  The former is a statement of fact – in other words, this investment meets the criteria that you have set forth – the latter, a statement of opinion.

[51] Complaint at ¶¶ 10, 16-18, 20, 31, Attachment A. The Moving Parties address certain of the pre-investment misrepresentations by arguing that they were contained in a PowerPoint presentation that was intended to describe Carlyle as a whole, and not to describe the specific investment in Carlyle Capital.  This is even worse – if Carlyle's representations were not intended to be applied to Carlyle Capital, yet were presented to Mr. Huffington in an effort to induce him to invest in Carlyle Capital, this is an <u>admission</u> of a material omission actionable under §410(a)(2).

[52] Complaint at ¶¶ 36, 38-39, 41, 43.

also Pearce v. Duchesneau Group, 392 F. Supp. 2d 63, 74 (D. Mass. 2005). Moreover, an opinion or belief is actionable where "such an opinion is inconsistent with facts known at the time they are made." Marram I, 442 Mass. at 58 n. 24; Access Cardiosystems, 404 B.R. at 642; Glassman v. Computervision Corp., 90 F.3d 617, 627 (1st Cir. 1996). "[A] statement that is promissory in nature may be actionable if there is no intent to perform the promise at the time the statement is made." Access Cardiosystems, 404 B.R. at 642, n.67; Lawson v. Affirmative Equities, Co., L.P., 341 F. Supp. 2d 51, 65 (D. Mass. 2004). "A statement of opinion may also be actionable where the maker's knowledge of the subject matter is so superior that a reasonable recipient would understand the opinion as an assertion of fact." Id. at 65. Finally, "[w]hat might be innocuous 'puffery' or mere statement of opinion standing alone may be actionable as an integral part of a representation of material fact when used to emphasize and induce reliance upon such a representation." Casella v. Webb, 883 F.2d 805, 808 (9th Cir. 1989)[53]; see also Marram I, 442 Mass. at 58 n. 24.

Even if representations like "conservative" and "low risk" are deemed to be opinion statements by the Court, they remain actionable. Inherent in each of these "opinion" statements are representations as to hard facts; for example, the types of investments and the amount of leverage to be used. Knowing that the Moving Parties intended to use, in Mr. Rubenstein's own words, "excessive" leverage of 32:1 (a clear fact), an opinion that an investment in Carlyle Capital was "conservative" or "low risk" was most certainly false, and thus actionable.

---

[53] In Casella, the Ninth Circuit held that a misrepresentation that an investment was a "sure thing" was actionable when "evaluated in context." 883 F.3d at 808. "Statements made in the course of an oral presentation cannot be considered in isolation, but must be viewed in the context of the total presentation." Id. (citations omitted). Specifically, the Ninth Circuit found that such a statement was actionable because it "was coupled with, and served to emphasize, specific misrepresentations of fact as to the future profitability … and the tax benefits that would flow from the investment, which were unquestionably material." Id. (emphasis added). Likewise, in Pearce, statements that a defendant would "carefully manage her retirement assets to ensure against losses," combined with a failure to contact plaintiff regarding "more suitable investments, or to reduce the serious risk exposure," were held actionable for a fraudulent misrepresentation claim. 392 F. Supp. 2d at 74.

**B.    The "Bespeaks Caution" Doctrine Is Inapplicable**

The Moving Parties' final argument with respect to materiality is that the misrepresentations alleged by Mr. Huffington are not actionable under the "bespeaks caution" doctrine.  Although few decisions have addressed the issue of whether this federal securities law doctrine governs state Blue Sky claims, at least one court has refused to apply it to a §410(a)(2) claim.  See Duperier v. Texas State Bank, 28 S.W.3d 740, 752 (Tex. App. 2000) ("Appellants ask this Court to adopt the bespeaks caution doctrine from federal law . . . we decline to adopt the [ ] doctrine"); cf. Roer v. Oxbridge Inc., 198 F. Supp. 2d 212, 231 (E.D.N.Y. 2001) (dismissing federal claims under bespeaks caution doctrine, but dismissing state claims for fraud, misrepresentation and deceptive acts and practices only because it no longer had supplemental jurisdiction).[54]

Even if this Court were to determine that the doctrine governed state Blue Sky law claims, it is inapplicable here.  The First Circuit has described the doctrine as follows:

> The "bespeaks caution" doctrine "is essentially shorthand for the well-established principle that a statement or omission must be considered in context." It embodies the principle that when statements of "soft" information such as forecasts, estimates, opinions, or projections are accompanied by cautionary disclosures that adequately warn of the possibility that actual results or events may turn out differently, the "soft" statements may not be materially misleading under the securities laws. In short, if a statement is couched in or accompanied by prominent cautionary language that clearly disclaims or discounts the drawing of a particular inference, any claim that the statement was materially misleading because it gave rise to that very inference may fail as a matter of law.

Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1213 (1st Cir. 1996).  Moreover, in order for the doctrine to apply, the statements must be "forward-looking."  Id.

---

[54] But see Lucas v. Downtown Greenville Investors Ltd. Partnership, 284 Ill. App. 3d 37 (1996) (considering doctrine and finding it inapplicable to specific facts without considering issue of whether it should apply to Blue Sky claims).

The bespeaks caution doctrine fails to meet this standard for several reasons. First, few if any of the misrepresentations are "forward-looking." As was the case in <u>Shaw</u>, where statements have elements that are representations of "present fact," the doctrine is inapplicable. <u>Id</u>. Second, "cautionary statements" relied upon by the Moving Parties did not accompany the statements – here Mr. Huffington does not base his claims on any misrepresentations in the offering materials themselves, but rather on misrepresentations made prior to the delivery of those documents and well after the sale of securities had been consummated. Third, "[v]ague or boilerplate disclaimers are insufficient to invoke" the bespeaks caution doctrine. <u>Rosenbaum Capital LLC v. Boston Communications Group, Inc.</u>, 445 F. Supp. 2d 170, 176 (D. Mass. 2006). Here, it is not the misrepresentations that are "soft," but rather the cautionary language. As was the case in <u>Marram I</u>, "it is far from clear that the representations in the [offering materials] contravene the specific, detailed oral representations" made to Mr. Huffington. <u>Marram</u>, 442 Mass at 56.

The misrepresentation held to be actionable in <u>Shaw</u> dealt with the "<u>adequacy</u>" of a reserve – a term very similar to many of those challenged by the Moving Parties here, such as "conservative" and "low risk". Moreover, the Complaint contains a specific allegation that there was a misrepresentation as to the adequacy of the liquidity cushion. As was the case in <u>Shaw</u>, these representations are actionable.

## Conclusion

For the reasons set forth herein, plaintiff Michael Huffington respectfully requests that

this Court deny the Motion to Dismiss for Lack of Standing and for Failure to State a Claim and

grant such other and further relief as it deems just and proper.

Dated:  October 30, 2009                    Respectfully submitted,
                                            **MICHAEL HUFFINGTON**
                                            By his attorneys,


                                            /s/ Paul V. Curcio
                                            Paul V. Curcio (BBO #545554)
                                            Pamela E. Berman (BBO# 551806)
                                            Philip Y. Brown (BBO #552366)
                                            Edward F. Whitesell (BBO #644331)
                                            Rory Z. Fazendeiro (BBO #648334)
                                            **ADLER POLLOCK & SHEEHAN P.C.**
                                            175 Federal Street
                                            Boston, MA  02110
                                            (617) 482-0600
                                            pcurcio@apslaw.com
                                            pbrown@apslaw.com
                                            ewhitesell@apslaw.com
                                            rfazendeiro@apslaw.com



## Certificate of Service

I, Rory Z. Fazendeiro, hereby certify that on October 30, 2009, a true and correct copy of
this document filed through the ECF system will be sent electronically to the registered
participants as identified on the Notice of Electronic Filing and that paper copies will be sent to
those indicated as non-registered participants.


                                            /s/ Rory Z. Fazendeiro


*513446_1.doc*