UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

Michael Huffington,                       )
                                          )
            Plaintiff,                     )
                                          )
        v.                                )
                                          )
TC Group, L.L.C., The Carlyle Group,      )        Civil Action No:  09-cv-11256
Carlyle Capital Corporation, Ltd., Carlyle )
Investment Management L.L.C., and David   )
M. Rubenstein,                            )
                                          )
            Defendants.                    )
_____)


**REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS FOR
LACK OF STANDING AND FAILURE TO STATE A CLAIM
BY DEFENDANTS TC GROUP, L.L.C., THE CARLYLE GROUP,
<u>CARLYLE INVESTMENT MANAGEMENT L.L.C., AND DAVID M. RUBENSTEIN</u>**

# TABLE OF CONTENTS

I.    Huffington Misrepresents the Holdings and Significance of the *Marram* Decision. ........................................................................................................... 2

II.    Huffington Does Not Have Standing To Bring These Claims. ......................................... 6

     A.    Huffington Fails To Respond to Defendants' Arguments Regarding Injury and Causation. ................................................................................. 6

     B.    Huffington, as the Former Beneficiary of Lanai, Does Not Have Standing. ...................................................................................................... 7

     C.    Huffington Lacks Standing To Bring Count I Because He Does Not Qualify as a "Purchaser" Under the Statute. ................................................. 9

     D.    Huffington's Equitable Argument That He Should Have Standing Fails. ..................................................................................................... 10

III.    Huffington's Opposition Fails To Demonstrate that He Has Stated a Claim. .................. 12

     A.    The Alleged Misrepresentations Were Immaterial as a Matter of Law ............... 12

     B.    The Alleged Representations Are Not Factual or Actionable Opinions.............. 14

     C.    A Number of the Alleged Misrepresentations Are Immaterial as a Matter of Law Under the Bespeaks Caution Doctrine......................................... 16

IV.    Huffington Fails To State a § 410 Claim. ....................................................................... 17

V.    Huffington Has Not Stated a Claim for Negligent Misrepresentation.............................. 18

VI.    Huffington's Chapter 93A Claim Fails as a Matter of Law............................................. 20

VII.    Huffington Has Not Stated Any Valid Claims Based on Post-Investment Representations. .............................................................................................................. 21

VIII.    Huffington Has Not Stated a Claim Against CIM or The Carlyle Group. ....................... 21

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*20 Atl. Ave. Corp. v. Allied Waste Indus., Inc.*, 482 F. Supp. 2d 60 (D. Mass. 2007) ..................16

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) .........................................................17, 18, 21

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975) ......................................................9

*Brine v. Paine Webber, Jackson & Curtis, Inc.*, 745 F.2d 100 (1st Cir. 1984) .............................11

*Brumbaugh v. Wave Systems Corp.*, 416 F. Supp. 2d 239 (D. Mass. 2006)................................14

*DeBruyne v. Equitable Life Assur. Soc'y*, 920 F.2d 457 (7th Cir. 1990)......................................14

*Fitzer v. Sec. Dynamics Techn., Inc.*, 119 F. Supp. 2d 12 (D. Mass. 2000) ..................................14

*Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999)........................................................................11

*Gross v. Diversified Mortg. Investors*, 431 F. Supp. 1080 (S.D.N.Y. 1977)..........................7, 8, 9

*Guerra v. Teradyne, Inc.*, No. 01-11789, 2004 WL 1467065 (D. Mass. Jan. 16, 2004)...............13

*Hackford v. First Sec. Bank of Utah, N.A.*, 521 F. Supp. 541 (D. Utah 1981) ..........................7, 8

*Hermes Aero, LLC v. Bombardier, Inc.*, No. CV 03-5100 AHM (C.D. Cal. Oct. 28, 2003)
        (attached as Reply Ex. 4) ........................................................................................12

*In re Computervision Corp. Sec. Litig.*, 869 F. Supp. 56 (D. Mass. 1994)...................................20

*In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259 (2d Cir. 1993) ......................................................20

*Isham v. Perini Corp.*, -- F. Supp. 2d --, 2009 WL 3403131 (D. Mass. Oct. 7, 2009) .................13

*Kennedy v. Josephthal & Co., Inc.*, 814 F.2d 798 (1st Cir. 1987)..................................................19

*Lopez v. United States*, 349 F. Supp. 2d 179 (D. Mass. 2004) ......................................................12

*Mass. Laborers' Health & Welfare Fund v. Philip Morris, Inc.*, 62 F. Supp. 2d 236 (D.
        Mass. 1999)..............................................................................................................19

*Mayer v. Oil Field Sys. Corp.*, 803 F.2d 749 (2d Cir. 1986) ........................................................17

*Orton v. Parametric Tech. Corp.*, 344 F. Supp. 2d 290 (D. Mass. 2004).....................................14

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
        -- F. Supp. 2d --, 2009 WL 3149775 (D. Mass. Sept. 30, 2009) .............................13

*Sebago, Inc. v. Beazer E., Inc.*, 18 F. Supp. 2d 70 (D. Mass. 1998)................................................18

*TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438 (1976) ...........................................................4, 6

## STATE CASES

*Duperier v. Texas State Bank*, 28 S.W.3d 740 (Tex. App. 2000)..................................................16

*Gurry v. Cumberland Farms, Inc.*, 406 Mass. 615 (1990) ...........................................................12

*Lisciotti v. Lattanzio*, No. 042155, 2006 WL 2848675 (Mass. Super. Ct. Sept. 15, 2006)..........11

*Markoff v. Hayward*, No. 08727A, 2009 WL 3416249 (Mass. Super. Ct. July 27, 2009) .............8

*Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43 (2004)........................................... passim

*O'Connor v. Redstone*, 452 Mass. 537 (2008)...............................................................................8

*Vittands v. Sudduth*, 49 Mass. App. Ct. 401 (2000) ....................................................................12

## OTHER AUTHORITIES

69A Am. Jur. 2d Securities Regulation-Federal § 1118 (2005) ....................................................14

Fed. R. Civ. P. 8(a) ....................................................................................................................1, 17

Fed. R. Civ. P. 17........................................................................................................................10

M.G.L. Chapter 93A ..............................................................................................................2, 4, 20

M.G.L. Chapter 110A, § 410 ................................................................................................. passim

Restatement (Second) of Trusts § 342 ..........................................................................................11

**INTRODUCTION**

This case arises from a substantial purchase of shares in Carlyle Capital Corporation ("CCC").  Plaintiff Michael Huffington chose not to make that purchase himself, but to participate in CCC through a legally distinct trust.  For unexplained reasons, Huffington later revoked the trust and distributed the trust's assets to himself.  That transaction cut the causal chain between any representations made in connection with the trust's investment, and the loss in value of CCC's shares that occurred after the trust's ownership ended.  Huffington now suggests that this Court should disregard his decisions to use a trust and to have the trust distribute the CCC shares to him.  In short, Huffington wishes to enjoy the legal benefits of trust-based investing, whether for tax or probate purposes, without accepting the burdens that might follow.

Huffington offers no legal support for disregarding the trust that he decided to use and, instead, relies on an argument about equity.  Equity, however, is not served by permitting sophisticated investors to reap the benefits of legal structures and formalities, only to later disavow those formalities when it suits their interests.  Although Huffington complains that following the letter of the law would be "unfair," the legally required result is a foreseeable and reasonable consequence of voluntary decisions taken in his own self-interest.

Second, even if Huffington does have standing, the complaint does not satisfy the Rule 8(a) pleading standard.  Most significantly, the complaint asserts claims based on a handful of vague and subjective opinion statements, which are not actionable as a matter of law. Huffington fails to respond to the detailed analysis offered in the Motion to Dismiss.  Instead, he repeatedly references the denial of a motion to dismiss in another case, arguing that resolution of these issues is premature.  Ample Massachusetts case law is to the contrary.  Additionally, Huffington's claims fail because at least one required element is not adequately pled for each.

## I.    Huffington Misrepresents the Holdings and Significance of the *Marram* Decision.

Huffington argues that dismissal on the pleadings is unavailable in this case because a motion to dismiss was unsuccessful in one other case briefed by his counsel: *Marram v. Kobrick Offshore Fund, Ltd.*, 442 Mass. 43 (2004). Huffington cites or refers to the Supreme Judicial Court's *Marram* decision twenty-nine times (in a twenty-four page brief), as he argues that *Marram* is dispositive here. A review of what *Marram* holds, and does not hold, demonstrates that Huffington's heavy reliance on this single case is misplaced.

The *Marram* plaintiff alleged that the defendant, Kobrick, made misleading statements to induce Marram, as trustee of a Profit Sharing Plan, to invest in his fund. 442 Mass. at 46. The statements focused on the fund's diversification: "Marram told Kobrick that the plan was seeking to invest in a diversified fund that would preserve capital. Kobrick touted his 'long history of success as a fund manager,' represented that the offshore fund was 'diversified' and 'invested in a variety of industries,' and 'represented that the stock of high technology companies did not constitute a  majority of the [offshore fund's] holdings and that he managed the [offshore fund] in such a way that it would not be a volatile investment vehicle.'"  *Id.*

The defendants moved to dismiss, arguing that: (1) oral misrepresentation claims were barred by the Subscription Agreement's integration clause; (2) oral misrepresentation claims were barred by disclosures in the written subscription documents, where the investor represented that it was not relying on any representations other than those in the Agreement; (3) oral misrepresentations were not "material" as a matter of law where they were contradicted by accurate written disclosures because of, *inter alia*, the integration clause; (4) post-investment representations were non-actionable because they were made during a freeze on sales of the shares; and (5) the alleged statements did not constitute violations of Chapter 93A.  As is

evident, the primary arguments in support of dismissal were based on the contract's integration and reliance clauses.[1] The plaintiff appealed after the trial court granted the defendants' motion.

The SJC laid out the elements a plaintiff must prove to state a § 410 claim: that "(1) the defendant 'offers or sells a security'; (2) in Massachusetts; (3) by making 'any untrue statement of a material fact' or by omitting to state a material fact; (4) the plaintiff did not know of the untruth or omission; and (5) the defendant knew, or 'in the exercise of reasonable care [would] have known,' of the untruth or omission." *Id.* at 52 (quoting M.G.L. c. 110A, § 410(a)(2)).[2]

In its central holding, the court rejected the defendants' arguments based on the integration and reliance clauses, finding that "the existence of contradictory written statements, in an integration clause or otherwise, does not provide a defense to the charge of preinvestment materially misleading oral statements," because "to permit the seller of securities to discharge, or to defeat, his statutory obligation of truthfulness to the buyer merely by attaching an integration clause to a subscription agreement would enfeeble the statute." *Id.* at 55.

The court briefly addressed the question whether the purported misrepresentations were "material," observing that the "determination of materiality is a mixed question of law and fact ordinarily decided by the trier of fact. 'Only if the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality is it appropriate for the district court to rule that the allegations are inactionable as a

---

[1] The integration clause stated that the Agreement "constitutes the entire arrangement and understanding between the parties." The "reliance" clause provided that "the Investor has relied solely upon the Memorandum, the other Fund Documents and independent investigations made by the Investor." 442 Mass. at 47–48.

[2] The SJC also observed that § 410 protects sellers of securities with two statutory affirmative defenses: A defendant will not be liable if "'a plaintiff [buyer] actually knows that a representation is false,'" or if the defendant "'did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.'" 442 Mass. at 54 (quoting M.G.L. c. 110A, § 410(a)(2)). The court made no attempt to reconcile its identification of these both as defenses and as elements of the claim.

matter of law.'" *Id.* at 58 (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976)). Applying that standard to the alleged representations, the court found without explanation that the allegations of materiality were sufficient. *Id.* at 58–59.[3]

The *Marram* court's discussion of negligent misrepresentation focused on the key difference between that tort and the plaintiff's statutory claim—the existence of "justifiable reliance" as a required element of the tort. *Id.* at 59. Noting that a plaintiff's reliance may be deemed unreasonable as a matter of law, the court declined to make that finding in *Marram*, because there was "no factual record that the specific oral representations Kobrick allegedly made to Marram were contradicted elsewhere." *Id.* at 60. Finally, the court reinstated the Chapter 93A claim because a finding of negligent misrepresentation "may be so extreme or egregious as to constitute a violation of G.L. c. 93A." *Id.* at 62.

The *Marram* opinion addressed a complaint and a motion to dismiss that were markedly different from those at issue here. First, the allegedly misleading statements in *Marram* were, with one narrow exception, related to a single, factual topic: the diversification of the fund's portfolio.[4] The absolute statements that the fund was invested in a "variety" of industries and that technology did not comprise a "majority" of its holdings were verifiably true or false. Unlike the statements in this case, they were not expressions of personal opinion, nor were they a salesman's "puffery." Moreover, as *Marram* found, the oral representations were consistent with, rather than contradicted by, the written offering memorandum, which stated that the fund "will hold a diversified portfolio of securities." *Id.* at 55–56.

---

[3] Specifically in the context of the Chapter 93A claim, the court rejected the argument that the post-investment representations were inactionable puffery. 442 Mass. at 62. The court did not discuss the application of the puffery doctrine to the alleged pre-investment representations.

[4] The sole exception was Kobrick's statement "tout[ing] his 'long history of success as a fund manager.'" 442 Mass. at 46. That statement, the only one unrelated to diversification, was not discussed in *Marram*.

Huffington emphasizes the defendants' representation in *Marram* that the fund was managed "in such a way that it would not be a volatile investment vehicle," and argues that it is comparable to the representations here (and, therefore, that *Marram* controls here). Opp. at 19. Huffington takes the phrase out of context; that phrase was part of a longer quotation, focused specifically on the issue of diversification. Kobrick allegedly "represented that the stock of high technology companies did not constitute a majority of the [offshore fund's] holdings and that he managed the [offshore fund] in such a way that it would not be a volatile investment vehicle." 442 Mass. at 46. The statement was not a stand-alone description of the fund's "volatility" or risk; it was an explanation of the significance of the fund's purportedly diversified portfolio.

As explained in the opening brief, the representations in this case are comparative and subjective, unlike the factual statements in *Marram* regarding a specific (and objectively verifiable) trait of that fund. The *Marram* complaint alleged that the representations were demonstrably false because the "1999 Audited Financial Statements also revealed that, in fact, the Offshore Fund was not diversified, but was heavily invested in high technology stocks." *Marram* Compl. ¶ 18 (attached as Reply Ex. 1).[5] There is no similar objective comparison here.

Second, the core holding of *Marram* was a rejection of the argument that an integration clause could immunize a defendant from misrepresentation claims. Defendants here have not made contractual arguments in support of their motion to dismiss for failure to state a claim.

Third, although the *Marram* court found that the representations there were not immaterial as a matter of law, it did not reject the notion that materiality may be determined on the pleadings. To the contrary, *Marram* recognized that some representations may be so immaterial as to make it "'appropriate for the district court to rule that the allegations are

---

[5] Citations to "Ex. _" are references to the exhibits attached to Defs' Mem. in Support of Mot. to Dismiss for Lack of Standing and Failure to State a Claim. "Reply Ex. _" indicates exhibits attached to this brief.

inactionable as a matter of law.'"  442 Mass. at 58 (quoting *TSC Indus.*, 426 U.S. at 450).  Other than acknowledging the well-accepted principle that some misrepresentation claims are not susceptible to dismissal on the pleadings, *Marram* does not address the materiality arguments presented in this Motion.  Based on Huffington's allegations in this case, and the documents on which his complaint relies, dismissal is appropriate here.

## II.    Huffington Does Not Have Standing To Bring These Claims.

Huffington's argument in support of his standing is that Lanai invested in CCC using his funds and, as the sole beneficiary of the trust, "he" was injured when the investment lost value.  But Huffington does not address his own allegations, which concede that Lanai was the purchaser of CCC shares and that Lanai later distributed the shares to Huffington.  Nor does Huffington deny that the complaint is devoid of any allegations regarding what losses, if any, Lanai suffered before it transferred shares, or deny that the complaint makes no allegations connecting the purported pre-investment misrepresentations to Huffington's receipt of the shares.  Huffington created a legal entity, purchased through that entity, and caused the entity to transfer the shares, but now asks this Court to disregard the consequences of his choices.[6]

### A.    Huffington Fails To Respond to Defendants' Arguments Regarding Injury and Causation.

The complaint alleges that Lanai purchased the shares, owned them for a period of time and subsequently distributed them to Huffington.  Thereafter, Huffington allegedly owned the shares.  The complaint's allegations addressing the causation component of standing relate to the time of Lanai's ownership, but the allegations describing the injury occur during Huffington's ownership and specify only an alleged loss to Huffington.  Huffington has not offered any

---

[6]  Huffington has made no claim in connection with the CCC investment made by his other trust, the Archangel Michael Foundation, which is a California trust.

explanation for why this Court should overlook the intervening event that cut the causal connection between these two periods.  Thus, Lanai has suffered no cognizable injury because the loss alleged did not occur during Lanai's period of ownership (and, indeed, the complaint claims only that Huffington suffered a loss) and Lanai could not be injured by a later devaluation of the shares.[7]  Lanai itself, therefore, does not have standing.  Even assuming that Huffington could find a basis on which he, as the former beneficiary, could sue on Lanai's behalf, he nonetheless would lack standing because the complaint does not allege injury to Lanai.

**B.    Huffington, as the Former Beneficiary of Lanai, Does Not Have Standing.**

Recognizing that he has no standing to bring this action in his capacity as the current owner of the shares,[8] Huffington instead claims that he has standing "because, as the sole beneficial owner of the securities held by Lanai, it was he who was injured."  Opp. at 4.  He cites two cases—each more than two decades old and from a foreign jurisdiction—for the proposition that a trust beneficiary has "standing to bring [an] action in connection with the sale of securities held by [the] trust."  *Id.* at 4 (citing *Hackford v. First Sec. Bank of Utah*, N.A., 521 F. Supp. 541, 549 (D. Utah 1981); *Gross v. Diversified Mortg. Investors*, 431 F. Supp. 1080, 1093 (S.D.N.Y. 1977)).  Neither case, however, stands for the proposition asserted by Huffington.

*Hackford* relates solely to an intra-trust dispute.  The case involved claims brought by minor members of a Native American tribe, for whom a trust had been created by federal statute.  The minors alleged that the trustee (appointed by the Secretary of the Interior) had breached its

---

[7] The complaint contains no allegation regarding the value of the CCC shares at the time of transfer, nor does it allege what consideration, if any, Lanai received for the shares.  Thus, there are no allegations of any injury to Lanai during its period of ownership of the CCC shares.

[8] Huffington has not claimed that he brought suit as the current, individual owner of the shares.  Any such claim would fail, since Huffington has not alleged and could not allege any causal connection between the representations and his subsequent acquisition of the shares.

7

fiduciary duty and engaged in securities fraud by selling securities held by the trust at a below market price.  521 F. Supp. at 544–49.  Because the claim was against the trustee, the beneficiaries had no means to vindicate their interest except by suing on their own behalf.

Huffington's second case is equally unhelpful to him.  In *Gross*, the court permitted a beneficiary to sue for securities fraud claims, but the court based its decision on the unusual trust documents that permitted the beneficiary to make investment decisions (without the trustee) and relieved the trustee of liability for such decisions.  431 F. Supp. at 1093 ("Suing on behalf of the Duban Trust, plaintiff, acting pursuant to his reserved powers under the Trust, allegedly instructed the Trustee to purchase the shares of DMI in question here and relieved the trustee from any liability for such purchases.").  Thus, where trust documents expressly authorized a beneficiary to make investments and the beneficiary brought suit based on those same investments, he had standing.  Huffington has not alleged any similar facts about Lanai.

Huffington has cited no case that supports the notion that a trust beneficiary generally has standing to sue in connection with securities investments made by the trust.  To the contrary, Massachusetts courts recognize that injuries allegedly suffered by a trust must be remedied through an action brought by the trustee.[9]  *See, e.g.*, *O'Connor v. Redstone*, 452 Mass. 537, 540 n.7 (2008) (recognizing principle that only current trustee of trust has authority to bring claims on behalf of trust).[10]  Moreover, this principle applies without qualification where the beneficiary was the recipient of allegedly misleading statements made in connection with an investment by the trust.  *See, e.g.*, *Markoff v. Hayward*, No. 08727A, 2009 WL 3416249, at *2 (Mass. Super.

---

[9] While Huffington also was Lanai's trustee, he no longer holds that position because the trust no longer exists.  He does not claim to have standing on the basis of his status as former trustee of Lanai.

[10] In *Marram*, the plaintiff (also represented by Huffington's counsel) agreed that Massachusetts law generally requires a trustee to bring claims on behalf of a trust.  Case No. 01-02815, Dkt. 64, at p. 8.

Ct. July 27, 2009) (dismissing for lack of standing misrepresentation claims, brought by trust beneficiary, where she was the recipient of allegedly misleading statements).

In any event, even if a trust beneficiary could establish standing to bring a claim on behalf of a Massachusetts trust (and Huffington offers no law to that effect), Huffington offers no support, much less a logical argument, for how a *former* trust beneficiary can establish standing to bring a claim held by the trust *after* his beneficial interest has been extinguished.

### C.    Huffington Lacks Standing To Bring Count I Because He Does Not Qualify as a "Purchaser" Under the Statute.

In response to defendants' argument on Count I, the § 410 claim, Huffington contends that he has standing because the general rule—that statutory securities fraud claims are available only to purchasers—"does not apply to the beneficiary of a trust." Opp. at 4. Huffington makes that broad assertion without a case citation—contradicting the Supreme Court's holding in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 749 (1975), and the plain language of § 410. The only support that Huffington offers for his argument that this Court should disregard the text of § 410 is a general reference to the *Gross* case. *Gross* does not hold, or even imply, that the statutorily imposed purchaser requirement is inapplicable to trust beneficiaries.

Insofar as Huffington is arguing that the plain text of § 410 ought not be applied to trust beneficiaries, or ought not be applied to him, his argument is that the statutory standing requirement should be disregarded because he (individually) was "intimately involved" in the purchase.[11] Although *Blue Chip* was premised on the concern that members of the general public should not be permitted to bring claims relating to securities to which they had no

---

[11] Huffington also argues that he must have been "the purchaser" because the SA required him to sign a statement representing that he was a "qualified purchaser." Opp. at 4. That is incorrect. Lanai represented that its investment decisions were "directed by" someone who (in their individual capacity) was a "qualified" investor. Ex. 6 at Q-6–Q-7. That was not a representation that such person was the "purchaser." To the contrary, the Agreement identifies Lanai as the purchaser. *Id.* at Q-1.

meaningful connection, it offers no support for the contra-statutory theory that "involvement" with a purchase of securities is sufficient to establish standing. While Huffington's circumstances may not be identical to that of a member of the general public, he does not deny that he was not the purchaser of the shares. Thus, he lacks standing to bring a § 410 claim.

### D.     Huffington's Equitable Argument That He Should Have Standing Fails.

Huffington urges this Court not to concern itself with the "legal technicalities of [the] transaction," because "as the sole beneficiary of Lanai, *he* was directly injured." Opp. at 5. His argument is a plea sounding in equity: that it would be unfair to deny him standing because he suffered a loss. There is, however, another side to the story about what is "fair" or equitable.

Huffington states that "the investment decision was solely his to make, and he funded the investment with his own personal savings."[12] Opp. at 4. Even assuming these assertions are true, Huffington decided to execute the purchase of CCC securities through a trust, rather than purchasing directly. Having created a legal structure to enjoy its benefits, Huffington cannot now claim that it is "unfair" to hold him to the legal consequences of his strategy. Presumably, Huffington would not make such an argument to a probate court or the Internal Revenue Service.

Huffington also argues that he should be permitted to proceed with this lawsuit because of Rule 17, which permits substitution of parties, because he effectively is the "successor-in-interest" to the now-defunct Lanai. Opp. at 6 n.10. That argument fails because a successor in interest can assert only those claims that the original party once had. Here, the complaint does not allege that Lanai suffered any injury, therefore, Lanai has no claim that it could have passed to its successor(s). Defendants' argument is not premised on the notion that Huffington failed to include certain key words, such as "on behalf of" or "in his capacity as former beneficiary,"

---

[12] It is not, and cannot be, literally true that the investment was funded with Huffington's "personal savings," as the shares were purchased with money from a Lanai bank account. Ex. 6 at 14.

which omissions might be cured by changing the case caption.  Defendants contend that, on the alleged facts, neither Huffington or Lanai has standing, which no substitution of parties can cure.

When Huffington claims that a focus on legal "technicalities" means that there is no person or entity that can bring this claim, he is correct.  That is the case in any transaction where the original trust purchaser transfers its shares to another person and subsequently dissolves. *See, e.g.*, *Goldin v. Bartholow*, 166 F.3d 710, 718 (5th Cir. 1999) ("When the trust terminates, the trustee no longer has any personal, substantial interest in the outcome of the litigation.  His lack of standing would thus render the trust's claims against the appellees moot from the moment of termination.").  After a trust's assets are distributed, the trust ceases to exist.  *Lisciotti v. Lattanzio*, No. 042155, 2006 WL 2848675, at *6 (Mass. Super. Ct. Sept. 15, 2006) ("In the law of trusts, there can be no trust unless there is an existing trust res.") (citing Restatement (Second) of Trusts § 342 (1959) ("If there is a sole beneficiary . . . and the trustee transfers the trust property to him or at his direction, . . . the trust terminates although the purpose[] of the trust ha[s] not been fully accomplished.'"')).  Huffington has not suggested that, at the time of revocation, he took any steps to preserve the trust's ability to bring claims in the future, such as maintaining some property in the trust's res so that it would remain a viable entity.  Instead, the trust was completely dissolved and all of its property was transferred to Huffington.  The First Circuit has held that, while a trustee may sue on behalf of a trust during the trust's winding up period, that authority is limited "only" to efforts "to preserve the trust property while winding up the trust," and, thus, ceases after all assets are distributed.  *Brine v. Paine Webber, Jackson & Curtis, Inc.*, 745 F.2d 100, 104 (1st Cir. 1984).  The unsurprising (and fair) effect of Huffington's revocation of Lanai is that it cannot bring claims.[13]

---

[13] Huffington's creation of legal entities in order to conduct "his" affairs is well documented.  *See, e.g.*, Reply Exs. 2 & 3 (filings relating to Huffington's Delaware entities).  Huffington also is well-versed in

Defendants played no role in Huffington's decision to create Lanai, nor were they involved in his decision to terminate Lanai. Neither equity nor the law allows Huffington to have his cake and eat it too.[14] *Cf. Gurry v. Cumberland Farms, Inc.*, 406 Mass. 615, 626 (1990) ("[C]ourts refuse to allow corporations to assume the benefits of the corporate form and then disavow that form when it is to their and their stockholders' advantage."). Huffington's desire to escape the foreseeable consequences of his own choices does not justify avoidance of the rules of standing. To accept Huffington's suggestion that equity take precedence over an elementary legal requirement would be an unprecedented step with its own unforeseeable consequences.

## III.    Huffington's Opposition Fails To Demonstrate that He Has Stated a Claim.

Huffington's Opposition has scant legal or factual support, beyond its many citations to *Marram*, and largely fails to respond to the merits of defendants' arguments for dismissal.

### A.    The Alleged Misrepresentations Were Immaterial as a Matter of Law

Despite defendants' detailed, statement-by-statement analysis of the materiality of the misrepresentations alleged in the complaint, Huffington's sole response is that materiality is a question not ripe for adjudication on the pleadings. He repeatedly asserts, purportedly relying on

---

litigating through these entities. *See, e.g.*, *Hermes Aero, LLC v. Bombardier, Inc.*, No. CV 03-5100 AHM (C.D. Cal. Oct. 28, 2003) (attached as Reply Ex. 4). In *Hermes*, Huffington (acting through a corporation of which he was sole shareholder) filed a contract action against an airplane manufacturer. In dismissing the complaint, the court explained "Plaintiff is a Delaware corporation, with its principal place of business in Los Angeles. Plaintiff is owned and managed by its only employee, Michael Huffington, who may have formed the corporation for the sole purpose of purchasing an aircraft from Defendant." *Id.* at 1–2.

[14] If the Court has questions about standing, defendants request permission to engage in limited discovery. Such discovery would not convert the Motion into one for summary judgment. *See, e.g.*, *Lopez v. United States*, 349 F. Supp. 2d 179, 183 (D. Mass. 2004). Many of the facts asserted in Huffington's Affidavit are in tension with the complaint. The few pages of the Lanai trust agreement submitted to CCC do not include the terms governing revocation of the trust. It therefore is unclear whether Huffington had the ability to revoke the trust at his discretion, as he purports to have done. Likewise, Huffington's assertion that he was the "sole beneficiary" almost surely is inaccurate; a trust cannot be formed with a single person serving as sole grantor, sole beneficiary and trustee. *Vittands v. Sudduth*, 49 Mass. App. Ct. 401, 409 (2000). The Court may decide that it requires more information about why the trust was created,

*Marram*, that "the issue of materiality should not be decided on a motion to dismiss, and should only be decided by the Court on a motion for summary judgment in circumstances not present here."  Opp. at 19.  Huffington concedes that *Marram* states only that materiality determinations are "ordinarily decided by the trier of fact," but construes that phrase to mean that such determinations never are made on the pleadings.  But as the cases cited in defendants' opening brief demonstrate, materiality may be determined on a motion to dismiss.  *See, e.g.*, *Guerra v. Teradyne, Inc.*, Civ. A. No. 01-11789, 2004 WL 1467065 (D. Mass. Jan. 16, 2004) (dismissing misrepresentation claim because statements were deemed immaterial as a matter of law); *see also Isham v. Perini Corp.*, -- F. Supp. 2d --, 2009 WL 3403131, at *9–12 (D. Mass. Oct. 7, 2009) (dismissing securities fraud claims, *inter alia*, because statements were immaterial as a matter of law and fell within statutory provision that mirrors "bespeaks caution" doctrine); *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, -- F. Supp. 2d --, 2009 WL 3149775, at *7–9 (D. Mass. Sept. 30, 2009) (same).

Huffington contends, without analysis, that the alleged statements are "self-evidently material," because of *Marram*'s conclusion that the "alleged oral misrepresentations relat[ing] to . . . the suitability (risk profile) of the offshore fund given the investment goal of the investor (capital preservation)," 442 Mass. at 58, were material.  The finding of materiality in *Marram* cannot be imported here, given the distinguishable objective nature of those representations.

Most importantly, Huffington conflates whether a statement relates to a "material" topic with whether the statement itself is material.  Huffington has quoted from *Marram* in a manner that suggests that topical materiality is sufficient, but there can be no doubt that the correct analysis focuses on the materiality of the alleged statements themselves.  *See, e.g.*, *Isham*, 2009

---

what benefits Huffington obtained, the reason the trust was revoked, and whether Huffington had, but declined to exercise, the ability to preserve Lanai's claims.

WL 3403131, at *9 ("In accordance with the typical analysis in securities fraud cases within this Circuit, the Court analyzes the allegedly fraudulent statements separately, grouping together similar statements where helpful."). A statement is neither material nor immaterial simply because of the general topic to which it relates. Insofar as Huffington's argument is based on his claim that the issues of "'risk and volatility'" generally are "'more likely'" to be material, Opp. at 19 (quoting *DeBruyne v. Equitable Life Assur. Soc'y*, 920 F.2d 457, 465–66 (7th Cir. 1990)), he has failed to provide any meaningful response to the defendants' statement-by-statement analysis. *See Fitzer v. Sec. Dynamics Techs., Inc.*, 119 F. Supp. 2d 12, 26–27 (D. Mass. 2000) (evaluating materiality element of misrepresentation claim on statement-by-statement basis).

### B.    The Alleged Representations Are Not Factual or Actionable Opinions.

Huffington fails to respond to defendants' demonstration that the alleged misrepresentations were not factual in nature, apparently conceding that they were opinions. Opinion statements, of course, normally are not actionable, as a misrepresentation claim must be based on a misleading statement of "material fact." *Marram*, 442 Mass. at 58 n.24. Huffington responds to defendants' argument that the alleged statements were inactionable "puffery" by asserting only that "this issue is inappropriate for resolution on a motion to dismiss." Opp. at 20 & n.48.[15] As noted above, and as the caselaw repeatedly demonstrates, Huffington is incorrect.

---

[15] In claiming that a "puffery" argument cannot succeed at the 12(b)(6) stage, Huffington cites *Brumbaugh v. Wave Systems Corp.*, 416 F. Supp. 2d 239, 250 n.11 (D. Mass. 2006). Although *Brumbaugh* rejected the defendants' puffery argument at the pleadings stage, it did not hold that such arguments could never succeed at this stage. Indeed, Huffington misconstrues the quotation about the puffery doctrine having "gone the way of the dodo." Rather than endorsing that view, the Court noted that this quote from an AmJur annotation, 69A Am. Jur. 2d *Securities Regulation-Federal* § 1118 (2005), was "somewhat hyperbolic." 416 F. Supp. 2d at 250 n.11. The court then cited *Orton v. Parametric Tech. Corp.*, 344 F. Supp. 2d 290, 301 (D. Mass. 2004), as an example of a recent case in which a claim of alleged misrepresentation was dismissed as a "classic example of non-actionable corporate puffery."

While Huffington lists eleven representations, *id.* at 20–21, he provides no explanation as to how or why those statements are not mere puffery.

Huffington then argues that there are five "situations" in which "opinion and puffery statements" may be actionable—such as where the statements expressed opinions that were "'inconsistent with facts known at the time they are made,'" Opp. at 22 (quoting *Marram*, 442 Mass. at 58 n.24)—but says nothing about which of those "situations" applies to any of the alleged misrepresentations here. More importantly, the complaint does not allege that defendants were aware of contrary facts, or had contrary intentions, at the time of any statement. Thus, none of the five identified "situations" in which opinion statements may be actionable is relevant here.

Finally, Huffington devotes three sentences to an assertion—unsupported by any authority—that "representations like 'conservative' and 'low risk' . . . remain actionable." Opp. at 22. He contends that these opinion statements encompass "representations as to hard facts," such as the "types of investments and the amount of leverage to be used," which facts he says defendants knew to be false. *Id.* Huffington does not explain how a statement that CCC would be "lower in risk than private equity funds" speaks to any specific facts. To the contrary, such a representation is so vague that it could not fairly be interpreted as conveying any "hard facts." These opinion statements therefore cannot be "false."

The only statement that Huffington has identified that arguably could have been factual concerns the investment's leverage ratio. Even here, Huffington does not allege that he received a misrepresentation of a specific fact, such as that the fund would not be leveraged at all, or that a particular leverage ratio was incorrectly stated. Instead, he alleges that he was told that Carlyle funds generally (not CCC specifically) would avoid "overleverage." As in the complaint, Huffington relies exclusively on Rubenstein's post-liquidation statement that, "in hindsight," the

leverage ratios for CCC were "excessive."  Compl. ¶ 61.  That statement does not suggest, much less prove, that defendants' alleged statement was "false" at the time it was made, even under the definitions of falsity offered by Huffington.  *See 20 Atl. Ave. Corp. v. Allied Waste Indus., Inc.*, 482 F. Supp. 2d 60, 63 (D. Mass. 2007) ("Plaintiff must establish that defendant's statements . . . were false when made.").  Huffington has not identified any fact purportedly misrepresented, or how or why it was false at the time.

### C.    A Number of the Alleged Misrepresentations Are Immaterial as a Matter of Law Under the Bespeaks Caution Doctrine.

Addressing defendants' argument that the "bespeaks caution" doctrine renders certain of the alleged misrepresentations immaterial as a matter of law, Huffington argues that "at least one court has refused to apply [the doctrine] to a § 410(a)(2) claim."  Opp. at 23.  Huffington refers to one Texas state court decision (unsurprisingly, applying a Texas statute), *Duperier v. Texas State Bank*, 28 S.W.3d 740, 752 (Tex. App. 2000).  The *Duperier* decision does not hold that the bespeaks caution doctrine is, as a matter of law, inapplicable to Texas securities misrepresentation claims (or those of any other state), but, rather, is a case-specific finding that the doctrine did not render those particular statements immaterial.  *Id.* ("Given the facts of this case and the prospectus at issue, we decline to adopt the bespeaks caution doctrine.").

Second, Huffington argues that the bespeaks caution doctrine is inapplicable because (1) "few if any of the misrepresentations are 'forward-looking,'" (2) the cautionary statements did not accompany the misrepresentations, and (3) the disclaimers or cautionary language was too vague or general to effectively contradict the oral representations.  Opp. at 23–24.  Huffington yet again invokes *Marram*, although *Marram* does not address the doctrine.  For none of these arguments does Huffington identify to which specific representations he is referring, nor does he explain

how the principles apply here.  Defendants' Memorandum of Law addressed each of these

points, Defs. Mem. at 25–26, and Huffington has provided no reason to question that analysis.

## IV.    Huffington Fails To State a § 410 Claim.

The text of § 410 provides that a plaintiff must show that he did not "know[] of the

untruth."  M.G.L. c. 110A, § 410(a)(2); *see also Marram*, 442 Mass. at 52.  Huffington's

assertion—that his ignorance of the untruth of the falsity of the statements is an affirmative

defense, for which defendants bear the burden of proof, Opp. at 8—is incorrect.

Huffington contends that the complaint does contain the required allegation.  Opp. at 10.

The only relevant allegations appear in ¶ 62 (alleging that Huffington was not aware that the

leverage ratios might be as high as 32:1) and ¶ 71 (alleging that "Mr. Huffington, despite the

exercise of reasonable care, did not know and could not have known of the untrue statements

and/or omissions").  Neither is sufficient:  The allegation in ¶ 71 is a conclusory repetition of an

element of the cause of action, which does not meet the Rule 8(a) pleading standard.  *See, e.g.*,

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950–51 (2009).  The allegation in ¶ 62 is contradicted by

Huffington's concession that he was informed of CCC's use of leverage before the investment

was funded.  Compl. ¶ 31.

Also before the Court are the documents on which the complaint relies, which further

reveal the inadequacy of Huffington's conclusory allegations.  Defs. Mem. 30–31 & n.20.  The

SA contains Huffington's representation, on behalf of Lanai, that he "received, read carefully

and underst[ood]" the PPM, Ex. 6 at 4, and the PPM indisputably contained extensive and

accurate disclosures about CCC's financing and the risks of an investment.  The complaint does

not allege that he failed to read or understand the PPM.  *See also Mayer v. Oil Field Sys. Corp.*,

803 F.2d 749, 755–56 (2d Cir. 1986) (defendant not liable where plaintiff read prospectus and

thus knew alleged misrepresentation was false) (cited approvingly in *Marram*, 442 Mass. at 54).

The PPM states repeatedly that the investment entailed a high degree of risk and that leverage would be used extensively, "without limit," and thus, Huffington fails to plead sufficient facts to establish that he did not know the representations were false.

Huffington also fails to allege that defendants knew or should have known of the untruth of their statements.  Here, the Opposition contends that "it is inconceivable that insiders of any of the Moving Parties could be completely ignorant about the investment strategy of their own fund."  Opp. at 10 n.23.  Huffington misstates the requirement.  Huffington must demonstrate that the defendants knew, or should have known, that the statements were false—not that defendants knew CCC's investment strategy.  As the alleged misrepresentations were opinions, they can be material misstatements only if the speaker was aware of contradictory facts *at the time the statement was made*.  Huffington has pled no facts in support of such a showing.

## V.    Huffington Has Not Stated a Claim for Negligent Misrepresentation.

Huffington has failed entirely to plead one of the necessary elements for a negligent misrepresentation claim and has insufficiently pled another.  First, Huffington has alleged reliance for only one purported misrepresentation.  In ¶ 29, the complaint alleges that "based on the representations" that CCC was "conservative," Huffington (as trustee of Lanai) "decided" to increase the size of the investment.  The ¶ 29 allegation applies only to one representation or, at best, to one category of representations, and does not address, for example, leverage.  Huffington also points to the ¶ 62 allegation that "he" would not have invested if he had been aware of CCC's leverage.  That general allegation, however, is contradicted by his acknowledgement that he was informed of the investment's leverage prior to Lanai's investment, Compl. ¶ 31, and therefore is not entitled to the presumption of truth.  *Iqbal*, 129 S. Ct. at 1951.

Huffington has not, therefore, sufficiently pled the element of reasonable reliance, which must be pled with particularity.  *Sebago, Inc. v. Beazer E., Inc.*, 18 F. Supp. 2d 70, 95 (D. Mass.

1998).  *Marram* observes that the reasonableness of a plaintiff's reliance is "normally" to be

decided by the fact finder, 442 Mass. at 59, but this Court has, in appropriate cases, dismissed

misrepresentation claims because "on the facts alleged in the complaint, no reasonable jury could

find that the plaintiff's reliance was reasonable."  *Mass. Laborers' Health & Welfare Fund v.*

*Philip Morris, Inc.*, 62 F. Supp. 2d 236, 242 (D. Mass. 1999).  In *Marram*, the court declined to

dismiss based on a finding of unreasonable reliance because there was "no factual record that the

specific oral representations Kobrick allegedly made to Marram were contradicted elsewhere."

442 Mass. at 60.  Here, the complaint's allegations, alongside the documents cited therein, reveal

that even if defendants had stated that CCC was conservative in an absolute sense (which, as the

complaint itself demonstrates, they did not, *see* Defs' Mem.  at 15–16), such an oral statement

would have been contradicted by the written disclosures, such that no reasonable jury could find

justified reliance.  Indeed, the documents properly before the Court describe CCC as

"involv[ing] a substantial degree of risk of loss," "suitable only for sophisticated investors" and

"extensively leverage[d]."  Ex.6 at 5, Ex. 4 at 56.  Thus, exclusive reliance on the oral statements

was unreasonable as a matter of law.  *See, e.g.*, *Kennedy v. Josephthal & Co.*, 814 F.2d 798, 805

(1st Cir. 1987) (plaintiff's reliance on oral statements was unreasonable where those statements

were contradicted by documents and plaintiff alleged no efforts to resolve the contradiction).

Second, an independent and fatal defect in Huffington's negligent misrepresentation

claim is his failure to plead privity or, in the alternative, defendants' knowledge of his reliance.

Huffington asserts that he was in privity with the defendants "because the misrepresentations

were made directly to him," and because the investment was made with his money.  Opp. at 13–

14.  Huffington asserts that "the fact that the securities were purchased in the name of Lanai does

not mean there is no privity between" Huffington and the defendants.  *Id*. at 14.  In support of

this novel definition of "privity," Huffington cites one New York case, where the court recognized a New York law exception to the privity requirement for misrepresentation cases where the plaintiff shows that the defendants knew (or should have known) of his reliance. *Id*. at 14 (citing *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 271 (2d Cir. 1993)). The case does not state that "privity" is established where representations were made to a particular party.[16]

Huffington does not ultimately dispute that the complaint fails to allege privity, but instead urges adoption of a new definition of privity that lacks any support in Massachusetts law. He also does not contest that the complaint fails to allege the alternative element of defendants' "actual knowledge of plaintiff's reliance." Unless this Court adopts a novel and unsupported definition of privity, Huffington has not stated a valid claim for misrepresentation.

## VI.    Huffington's Chapter 93A Claim Fails as a Matter of Law.

For the reasons described in defendants' Memorandum of Law, Huffington's Chapter 93A claim fails because that claim depends on a number of the same elements that were inadequately pled for Counts I and II. Having failed to plead a valid claim for negligent misrepresentation, Huffington cannot state a claim for violation of Chapter 93A.

Defendants' primary argument regarding Count III, however, was that, based on the complaint allegations, Huffington brought his claim under the wrong section. Section 11, under which Huffington sued, applies to transactions between two businesses or persons engaged in business. The Opposition responds by pointing only to the conclusory allegation, Compl. ¶ 79, that "the parties were businesses engaged in trade or commerce." A conclusory allegation

---

[16] Huffington also cites to *In re Computervision Corp. Sec. Litig.*, 869 F. Supp. 56, 65 (D. Mass. 1994), but that case was decided under New York law and only supports the proposition asserted by Huffington insofar as it references *Time Warner*. *In re Computervision* does not itself demonstrate that privity may be satisfied by showing that the statements were "intentionally directed at Mr. Huffington."

reciting the elements of a cause of action is insufficient. *See Iqbal*, 129 S. Ct. at 1951. The complaint alleges no facts suggesting Huffington or Lanai acted as a businessperson.

## VII. Huffington Has Not Stated Any Valid Claims Based on Post-Investment Representations.

Although the Opposition identifies a number of alleged post-investment representations by defendants, it does not address the complaint's failure to state a valid legal claim based on those representations. Huffington does not dispute that the complaint does not allege the falsity of, or any reliance on, the post-investment representations. Insofar as any portion of Counts II and III are based on post-investment representations, those claims should be dismissed.

## VIII. Huffington Has Not Stated a Claim Against CIM or The Carlyle Group.

The Opposition asserts that Huffington has stated a valid claim against The Carlyle Group because, in numerous places, the complaint references defendant Rubenstein's affiliation with "Carlyle." Use of the name "Carlyle" in connection with various entities or investment products does not constitute a sufficient allegation that "The Carlyle Group" is a legal entity that participated in any of the alleged wrongful conduct. The complaint alleges that "The Carlyle Group" is simply a trade name. Compl. ¶ 3. It is not alleged to be, and is not, a legal entity.

Huffington appears to attempt to preserve his claims against CIM by asserting that the post-investment misrepresentations "can be tied directly to CIM." However, he does not identify any allegations in the complaint that actually attribute the purported post-investment representations to CIM. An entity cannot be held liable for misrepresentation by affiliation.

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be granted.

Respectfully submitted,

TC GROUP, L.L.C., THE CARLYLE GROUP,
CARLYLE INVESTMENT MANAGEMENT L.L.C., and
DAVID M. RUBENSTEIN,

By their attorneys,

DWYER & COLLORA, LLP
Kathy B. Weinman (BBO No. 541993)
Michael B. Galvin (BBO No. 630515)
William A. Haddad (BBO No. 659829)
600 Atlantic Avenue
Boston, MA  02210
(617) 371-1000

/s/ Robert A. Van Kirk_____
Robert A. Van Kirk (admitted *pro hac vice*)
Nicholas J. Boyle (admitted *pro hac vice*)
Vidya A. Mirmira (admitted *pro hac vice*)
Sarah F. Teich (BBO No. 667300)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC  20005
(202) 434-5000
rvankirk@wc.com

November 25, 2009

## CERTIFICATE OF SERVICE

I, Sarah F. Teich, certify that a true and correct copy of this Reply Memorandum was filed through the ECF System on this 25th day of November 2009 and will be sent electronically to all counsel of record.

/s/ Sarah F. Teich_____