```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

|  |  |
|---|---|
| MICHAEL HUFFINGTON, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) CIVIL ACTION NO. 09-11256-PBS |
|  | ) |
| T.C. GROUP, LLC, THE CARLYLE GROUP, CARLYLE CAPITAL CORPORATION, LTD., CARLYLE INVESTMENT MANAGEMENT, LLC and DAVID M. RUBENSTEIN, | ) ) ) ) ) |
|  | ) |
| Defendants. | ) |
|  | ) |

**MEMORANDUM AND ORDER**

February 19, 2010

Saris, U.S.D.J.

## I. INTRODUCTION

This case involves an investment gone bad. Plaintiff, Michael Huffington, decided to invest in a fund raised by the Carlyle Group ("Carlyle")[1] after discussions with David Rubenstein, the Founder and Managing Director of Carlyle. Plaintiff alleges a violation of Mass. Gen. Laws ch. 110A, § 410, negligent misrepresentation, and unfair deceptive trade practices in violation of Mass. Gen. Laws ch. 93A, § 11.

---

[1] The defendants are T.C. Group, L.L.C., The Carlyle Group, Carlyle Capital Management, Carlyle Investment Management, L.L.C. and David M. Rubenstein.

The Carlyle Group defendants[2] move to dismiss the complaint for improper venue.  For the reasons stated below, the Court **ALLOWS** the motion.

## II. BACKGROUND FACTS

In the First Circuit, "a motion to dismiss based upon a forum-selection clause is treated as one alleging the failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6)."  Silva v. Encyclopedia Britannica, Inc., 239 F.3d 385, 387 (1st Cir. 2001).  For the purposes of a motion dismiss for improper venue, the Court "tak[es] the allegations in the complaint as true and mak[es] all reasonable inferences in favor of the Plaintiff."  Doran v. Mass. Turnpike Auth., 348 F.3d 315, 318 (1st Cir. 2003).

On August 29, 2006, the Carlyle Group formed a new fund, Carlyle Capital ("the Fund"), with the stated goal of "achiev[ing] risk-adjusted returns."  (Compl. ¶ 13.)  During a meeting at Huffington's home in Boston on October 20, 2006, Rubenstein presented the Fund as an investment opportunity for Huffington.  (Id. ¶ 16.)  At the meeting, Rubenstein told Huffington that the Fund would be managed conservatively, and provided Huffington with a brochure stating the same.  (Id. ¶¶

---

[2]Because defendant Carlyle Capital Management has neither joined nor opposed the motion to dismiss for improper venue, the Court considers Carlyle Capital Management joined to this motion to dismiss the claims for improper venue.

16-18.)  During their first meeting and through subsequent letters, mailed promotional materials, and telephone conversations prior to the plaintiff's investment, the defendant omitted material information about the leveraging of the Fund.  (Id. ¶¶ 16-22.)

The forum selection clause contained in the Subscription Agreement signed by both parties states:

> The courts of the State of Delaware shall have exclusive jurisdiction over any action, suit or proceeding with respect to this Subscription Agreement . . . .

(Def.'s Ex. 6 at 11.)

On January 9, 2007, Huffington, through the Lanai Living Trust ("the Trust")[3], invested $20,000,000 in the Fund, and in return received 1,000,000 shares.  (Compl. ¶ 30.)  On January 26, 2007, two weeks after his investment was finalized, Rubenstein told Huffington that the Fund would be leveraged.[4]  (Id. ¶ 31.)

Through e-mail and phone conversations from March 5, 2007 until November 15, 2007, Huffington continually inquired about

---

[3] Lanai Living Trust is a trust created by Huffington. Huffington was the sole founder, trustee and beneficiary of the trust.  On October 31, 2007, the Trust was revoked and all assets, including the Fund shares, were transferred to Huffington.

[4] Leveraging is "[t]he use of credit or borrowed funds (such as buying on margin) to improve one's speculative ability and to increase an investment's rate of return" or "[t]he ratio between a corporation's debt and its equity capital."  Black's Law Dictionary 926 (8th ed. 2004).  In this case, the funds were at one point leveraged at a ratio of 32:1.

the status of the Fund and was assured that his investment was safe.  In 2008, at the time of the margin calls,[5] the Fund was leveraged 32 times for $670 million in equity.  (Id. ¶ 49.)

On March 6, 2008, Rubenstein telephoned Huffington to tell him that the Fund had defaulted on its debt.  (Id. ¶ 52.)  On March 14, 2008, Rubenstein called Huffington again and informed him that the Fund was going under.  (Id. ¶ 57.)  At that point, the share price had dropped to $0.35 per share, which represents a decrease in value of more than 98 percent from when Huffington purchased shares in 2007.  (Id. ¶ 59.)  Two days later, The shareholders of the Fund voted to wind up the Fund.  (Id. ¶¶ 58.)  Plaintiff alleges that the "losses were a direct result of the extremely risky 32:1 leverage ratio . . . maintained by the Fund immediately prior to its collapse." (Id. ¶ 61.)  Plaintiff lost his entire investment.

### III.  LEGAL ANALYSIS

The defendants assert that this action must be dismissed because Huffington's claims are controlled by the forum selection clause contained in the Subscription Agreement.  Plaintiff responds that his claims are not covered by the forum selection clause, and that enforcement of the clause would violate public

---

[5] A margin call is "[a] securities broker's demand that a customer put up money or stock as collateral when the broker finances a purchase of securities.  A margin call usually occurs when the market prices of the securities are falling." Black's Law Dictionary 217 (8th ed. 2004).

policy.

Forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972).  Forum selection clauses will be honored unless the objecting party can show "that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching . . . [or that] enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or judicial decision." Id. at 15.  "It is the language of the forum selection clause itself that determines which claims fall within its scope." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 19 (1st Cir. 2009) (applying Bremen standard to a diversity suit).

The forum selection clause at issue directs to Delaware "any action, suit or proceeding with respect to this Subscription Agreement."  The parties vehemently dispute the meaning of the phrase "with respect to."  Under the caselaw, the phrase "with respect to" is typically interpreted as synonymous with "relating to," and broader in scope than "arising out of."  As the Second Circuit explained,

> The term "related to" is typically defined more broadly and is not necessarily tied to the concept of a causal connection . . . . Courts have similarly described the term "relating to" as equivalent to the phrases "in connection with" and "associated with," see Jackson v.

Lajaunie, 270 So.2d 859, 864 (La. 1972), and synonymous with the phrases "with respect to," and "with reference to," see Phoenix Leasing, Inc. v. Sure Broad., Inc., 843 F. Supp. 1379, 1388 (D. Nev. 1994), aff'd, 89 F.3d 846 (9th Cir. 1996), and have held such phrases to be broader in scope than the term "arising out of." See Jackson, 270 So.2d at 864."

Coregis Ins. Co. v. Am. Health Found., Inc., 241 F.3d 123, 128 (2d Cir. 2001). The general rule is that "contract-related tort claims involving the same operative facts as a parallel claim for breach of contract should be heard in the forum selected by the contracting parties." Lambert v. Kysar, 983 F.2d 1110, 1121-22 (1st Cir. 1993).

In light of this caselaw, the Court concludes that the forum selection clause covers the claims asserted in this action. While the claims of misrepresentation may not all arise out of the Subscription Agreement, they all relate to the Subscription Agreement. (See Compl. ¶¶ 74-76 (misrepresentations concern "information about the Fund both prior to and during the term of [Huffington's] investment" that induced Huffington to invest in the Fund and remain invested in the Fund).) See Northeast Data Sys., Inc. v. McDonnell Douglas Computer Sys. Co., 986 F.2d 607, 609-10 (1st Cir. 1993) (stating that when the essential elements of tort claims consist of contractual violations, those claims are related to the contract and are therefore governed by a contract's forum selection clause); see also Doe v. Seacamp Ass'n, Inc., 276 F. Supp. 2d 222, 227-228 (D. Mass. 2003) (tort and statutory claims, including misrepresentation and Chapter 93A

6

claims, covered by forum selection clause); see also id. at 228 ("where the source of the duty which the defendants allegedly owed to the plaintiffs is derived from the contractual relationship, the contractual provisions should govern").

To escape the hook of the forum selection clause, Huffington contends that his claims are predominantly based on fraudulent misconduct that occurred prior to the execution of the Subscription Agreement. While forum selection clauses may be voided based on fraud, see Bremen, 407 U.S. at 15, the fraud must relate to the inclusion of the forum selection clause as opposed to more generalized allegations of fraudulent inducement. As the Supreme Court explained,

> [the fraud exception provided in Bremen] does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud, as in this case, the clause is unenforceable. Rather, it means that [a] ... forum-selection clause in a contract is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion.

Scherk v. Alberto-Culver Co., 417 U.S. 506, 519 n.14 (1974) (emphasis in original).

Although the plaintiff alleges that he was induced to purchase the securities by misrepresentation, the plaintiff does not allege that the inclusion of the forum selection clause in the contract was the product of misconduct. Therefore, the forum selection clause is enforceable.

    **B. Anti-Waiver Provision and Public Policy Exception**

Relying on <u>Marram v. Kobrick Offshore Fund, Ltd.</u>, 442 Mass. 43 (2004), plaintiff contends that the Massachusetts blue sky law, Mass. Gen. Laws ch. 110A, bars the parties from enforcing the forum selection clause contained in the Subscription Agreement.  First, Plaintiff argues that the anti-waiver provisions of the Massachusetts blue sky law void the forum selection clause.  Mass. Gen. Laws ch. 110A, § 410(g) provides: "Any condition, stipulation, or provision binding any person acquiring any security to waive <u>compliance</u> with any provision of this chapter or any rule or order hereunder is void."  While this provision states that a person may not waive compliance with statutory provisions, it does not prevent a person from agreeing to litigate those rights in a state other than Massachusetts.  Further, a "chorus of authority" has concluded that "securities laws' anti-waiver provisions [do] not bar dismissal of" lawsuits based on forum selection clauses.  <u>Haynsworth v. Corporation</u>, 121 F.3d 956, 960 (5th Cir. 1997) (listing cases from six other circuits).

Plaintiff also argues that section 410(f) of the Massachusetts blue sky law operates as an absolute bar to enforcement of the forum selection clause.  That section provides, "No person who has made or engaged in the performance of any contract in violation of any provision of this chapter . . . may base any suit on the contract."  Mass. Gen. Laws ch. 110A,

§ 410(f).  Plaintiff correctly characterizes this provision as indicating that those who violate the statute may not "base any suit" on the underlying contract.  Here, Carlyle is not basing any suit on a contract, but is seeking to dismiss a suit brought by Huffington based on a forum selection clause in a contract.  The section is inapplicable.

Finally, Plaintiff argues that Massachusetts public policy precludes enforcement of the forum selection clause.  As the Supreme Court has explained, a forum selection clause "should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought."  Bremen, 407 U.S. at 15.  The Bremen Court nevertheless rejected the public policy argument put forth by the plaintiff, and suggested that judges should "be careful not to overemphasize the strength of the [asserted] policy."  Id. at 16.  Here, plaintiff argues that Massachusetts has a strong public policy of protecting investors from misrepresentations in the sale of securities under Massachusetts law, in Massachusetts courts.  While Massachusetts surely has a strong public policy of protecting its own investors, there is no reason to believe that courts beyond the Commonwealth cannot enforce that policy.

Most courts have rejected public policy exceptions to forum selection clauses requiring litigation of blue sky law in another venue.  See, e.g., Bonny v. Society of Lloyd's, 3 F.3d 156, 161

(7th Cir. 1993) (enforcing forum selection provision despite argument that it undermined the "clear public policy . . . of insuring full and fair disclosure by issuers and deterring the exploitation of United States investors"); Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1365 (2d Cir. 1993) (same); Shell v. R.W. Sturge, Ltd., 55 F.3d 1227, 1230-32 (6th Cir. 1995) (enforcing forum selection clause requiring litigation in England despite the "strong public policy" behind Ohio's securities laws); Organ v. Byron, 435 F. Supp. 2d 388, 392-93 (D. Del. 2006) (enforcement of choice of law clause applying Delaware law to Illinois securities claim did not contravene Illinois public policy).

Plaintiff's reliance on cases to the contrary is misplaced. In Brown v. Scripps Inv. & Loans, Inc., No. 08-1166, 2009 WL 1649947 (W.D. Wash. June 11, 2009), the court declined to enforce a forum selection clause requiring litigation in San Diego, California. In part, the court rejected the forum selection clause on public policy grounds. Brown, 2009 WL 1649947, at *5. The court identified the relevant public policy as Washington's interest in providing a remedy for the violation of its securities and consumer protection laws. Id. This policy would have been frustrated by the forum selection clause only because the plaintiffs lacked the financial resources to litigate in California. Id. Mr. Huffington has not suggested that he cannot afford to try this case in Delaware. Plaintiff also cites to two California decisions that are no longer supported by the weight

of law.[6]

Marram is inapplicable as well.  In that case, the Massachusetts Supreme Judicial Court vacated the lower court's decision to dismiss for failure to state a claim.  422 Mass. at 63.  While Marram also concerned an investment gone bad, it did not involve a forum selection clause.  Rather, Plaintiff cites to the SJC's holding that "an integration clause cannot release the defendants from liability" under the blue sky law.  Id. at 56.  Unlike the integration clause at issue in Marram, the forum selection clause at issue will not release the defendants from liability, but merely subject them to liability in a different venue.  While the Marram opinion does reflect the Massachusetts public policy of protecting investors, that policy is not implicated by forcing Huffington to litigate in Delaware.

## IV.  CONCLUSION

The defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) is **ALLOWED without prejudice**.[7]

---

[6] The Plaintiff cites to Hall v. Superior Court, 150 Cal. App. 3d 411 (1983) and Nutracea v. Langley Park Inv. PLC, No. 06-2019, 2007 WL 135699 (E.D. Cal. Jan. 16, 2007), which follows Hall.  The Hall court relied heavily on Wilko v. Swan, 346 U.S. 427 (1953), which was explicitly overturned by Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484-85 (1989).

[7] The Court does not address the newest dispute over whether the Forum Selection clause should be read to require filing in state court.

                    /s/ PATTI B. SARIS  
                    UNITED STATES DISTRICT JUDGE

**Publisher Information**
Note* This page is not part of the opinion as entered by the court.
The docket information provided on this page is for the benefit
of publishers of these opinions.

1:09-cv-11256-PBS Huffington v. TC Group, L.L.C. et al
Patti B. Saris, presiding
Date filed: 07/28/2009
Date of last filing: 02/01/2010

Attorneys

| | | |
|---|---|---|
| Nicholas J. Boyle  Williams & Connolly LLP  725 12th Street, NW  Washington, DC 20005  202-434-5343  nboyle@wc.com Assigned: 07/29/2009 LEAD ATTORNEY PRO HAC VICE ATTORNEY TO BE NOTICED | representing | Carlyle Investment Management L.L.C.  (Defendant) |
| | | TC Group, L.L.C.  (Defendant)  David M. Rubenstein  (Defendant)  The Carlyle Group  1001 Pennsylvania Avenue, N.W.  Washington, DC 20004  (Defendant) |
| Philip Y. Brown  Adler, Pollock & Sheehan, PC  175 Federal Street  Boston, MA 02110  617-482-0600  617-482-0604 (fax)  pbrown@apslaw.com Assigned: 07/28/2009 LEAD ATTORNEY ATTORNEY TO BE NOTICED | representing | Michael Huffington  (Plaintiff) |
| Kevin Marcus Colmey  Sullivan & Worcester LLP  One Post Office Square  Boston, MA 02109  617-338-2851  kcolmey@sandw.com Assigned: 11/13/2009 ATTORNEY TO BE NOTICED | representing | Carlyle Capital Corporation, Ltd.  (Defendant) |
| Paul V. Curcio  Adler, Pollock & Sheehan PC  175 Federal Street  Boston, MA 02110  617-482-0600  pcurcio@apslaw.com Assigned: 07/28/2009 LEAD ATTORNEY ATTORNEY TO BE NOTICED | representing | Michael Huffington  (Plaintiff) |
| Patrick P. Dinardo  Sullivan & Worcester LLP  One Post Office Square  Boston, MA 02109  617-338-2800  617-338-2880 (fax)  pdinardo@sandw.com Assigned: 11/13/2009 ATTORNEY TO BE NOTICED | representing | Carlyle Capital Corporation, Ltd.  (Defendant) |
| Rory Z. Fazendeiro  Adler, Pollock & Sheehan, P.C.  175 Federal Street  10th Floor  Boston, MA 02110  617-482-0600  617-482-0604 (fax) | representing | Michael Huffington  (Plaintiff) |

rfazendeiro@apslaw.com Assigned: 10/05/2009 LEAD ATTORNEY ATTORNEY TO BE NOTICED

Michael B Galvin   Dwyer & Collora, LLP  600 Atlantic Avenue   Boston, MA 02210   617-371-1075   617-371-1037 (fax)   mgalvin@dwyercollora.com Assigned: 07/28/2009 LEAD ATTORNEY ATTORNEY TO BE NOTICED representing Carlyle Investment Management L.L.C. (Defendant)

TC Group, L.L.C.  (Defendant)
David M. Rubenstein  (Defendant)
The Carlyle Group   1001 Pennsylvania Avenue, N.W.   Washington, DC 20004 (Defendant)

William A. Haddad   Dwyer & Collora   600 Atlantic Ave.   Suite 1200   Boston, MA 02210   617-371-1031   617-371-1037 (fax)   whaddad@dwyercollora.com Assigned: 07/28/2009 LEAD ATTORNEY ATTORNEY TO BE NOTICED representing Carlyle Investment Management L.L.C. (Defendant)

TC Group, L.L.C.  (Defendant)
David M. Rubenstein  (Defendant)
The Carlyle Group   1001 Pennsylvania Avenue, N.W.   Washington, DC 20004 (Defendant)

Pamela S. Holleman   Sullivan & Worcester LLP   One Post Office Square   Boston, MA 02109   617-338-2955   617-338-2880 (fax)   pholleman@sandw.com Assigned: 11/13/2009 ATTORNEY TO BE NOTICED representing Carlyle Capital Corporation, Ltd.  (Defendant)

Vidya A. Mirmira   Williams & Connolly LLP   725 12th Street, NW   Washington, DC 20005   202-434-5352   202-824-4206 (fax)   vmirmira@wc.com Assigned: 07/29/2009 LEAD ATTORNEY PRO HAC VICE ATTORNEY TO BE NOTICED representing Carlyle Investment Management L.L.C. (Defendant)

TC Group, L.L.C.  (Defendant)
David M. Rubenstein  (Defendant)
The Carlyle Group   1001 Pennsylvania Avenue, N.W.   Washington, DC 20004 (Defendant)

Sarah F. Teich   Williams & Connolly, LLP   725 12th Street, NW   Washington, DC 20005   202-434-5958   202-434-5029 (fax)   steich@wc.com Assigned: 11/02/2009 ATTORNEY TO BE NOTICED representing Carlyle Investment Management L.L.C. (Defendant)

TC Group, L.L.C.  (Defendant)
David M. Rubenstein  (Defendant)

| | | |
|---|---|---|
| Robert A. Van Kirk  Williams & Connolly LLP  725 12th Street, NW Washington, DC 20005  202-434-5163 rvankirk@wc.com Assigned: 07/29/2009 LEAD ATTORNEY PRO HAC VICE ATTORNEY TO BE NOTICED | representing | The Carlyle Group  1001 Pennsylvania Avenue, N.W.  Washington, DC 20004 (Defendant) Carlyle Investment Management L.L.C. (Defendant) TC Group, L.L.C.  (Defendant) David M. Rubenstein  (Defendant) The Carlyle Group  1001 Pennsylvania Avenue, N.W.  Washington, DC 20004 (Defendant) |
| Edward F. Whitesell, Jr.  Adler, Pollock & Sheehan, PC  175 Federal Street Boston, MA 02110  617-482-0600  617-482-0604 (fax)  ewhitesell@apslaw.com Assigned: 07/28/2009 LEAD ATTORNEY ATTORNEY TO BE NOTICED | representing | Michael Huffington  (Plaintiff) |